Everett R. COLLIER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Aug. 1, 1986.

Benjamin P. Hicks, Lexington, for appellant.

David L. Armstrong, Atty. Gen., Cicely Jaracz Lambert, Asst. Atty. Gen., Frankfort, for appellee.

Before HAYES, C.J., and DYCHE and HOWARD, JJ.

HAYES, Chief Judge:

Everett R. Collier appeals from a judgment of the Fayette Circuit Court rendered pursuant to a jury verdict, which found him guilty of the offense of possession of a handgun by a convicted felon (KRS 527.-040(1)) and carrying a concealed deadly weapon (KRS 527.020(1)); sentenced him to three years in prison; and which ultimately probated the sentence imposed under certain conditions. We affirm.

The appellant, Collier, was originally arrested in October, 1984. A young woman was violently assaulted in a Lexington, Kentucky bar and a description of the assailant was taken from the victim and broadcast by radio to police officers on duty. The first description of the assailant, which was broadcast almost immediately after the assault, described the suspect as "male, white ... reddish-blonde hair, shoulder-length with a beard ... extremely big, dressed in black leather ... very violent." A later dispatch amended the description to describe the suspect as "wearing a black leather vest and black pants ... Harley-Davidson tattoos on his arms," and motorcycle gang "colors" on his clothing.

Two Lexington police officers, concluding that the description appeared generally to be that of a motorcycle gang member, proceeded to another Lexington bar known to be frequented by motorcycle gangs. The officers entered the bar where they saw the appellant quietly sitting. The appellant is a white male, about five feet eight inches tall, and weighing approximately 170 pounds. His hair at that time was significantly shorter than shoulder

length, and was light brown in color. He was wearing a black leather vest and blue jeans and had a Marine Corps emblem tattooed on his right arm. One of the officers recognized Collier as having been previously arrested for carrying a handgun.

The two officers asked Collier to step outside where they did a pat-down for weapons before questioning him about his possible connection with the assault. The pat-down led to discovery of a handgun which was the basis for Collier's arrest and ultimate conviction. Collier was not involved in the assault in any way.

■ On appeal Collier argues that the actions of the officers in conducting the stop and frisk constituted an impermissible intrusion under the Fourth and Fourteenth Amendments and that the trial court committed reversible error in refusing to suppress evidence of the handgun in the trial below. The Commonwealth argues that both the stop and the search were permissible under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that the admission of the handgun into evidence was therefore proper under the circumstances. Although this is admittedly a close case, we must agree with the Commonwealth in this instance.

An investigatory stop under *Terry v. Ohio* is permissible on less than full probable cause to arrest where an officer has a reasonable, articulable suspicion that a particular person encountered was involved in or is wanted in connection with a completed felony. *See United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 681, 83 L.Ed.2d 604 (1985). Once a stop is made, in order to frisk for weapons, what is required is that the officer's observations lead him reasonably to conclude that the person with whom he is dealing may be armed and dangerous. *See Terry v. Ohio*, 88 S.Ct. at 1883. In some cases the right to frisk for weapons will follow automatically from the circumstances, such as where the stop is for suspicion of a violent crime. *See id.* at 1886. (Harlan, J., concurring).

We believe that, under the circumstances of the case before us, if the stop was proper then the frisk was certainly permissible to preserve the safety of the officers. Whether the stop was permissible turns upon whether the officers' suspicion that Collier may have been involved in the assault was reasonable and based upon particularized factors.

The officers in this case stopped Collier on the basis of several factors. Among these were the fact that Collier at least roughly matched the description of a suspect sought in connection with a violent and recent crime; that he was known to have been a member of a motorcycle gang; and that he was known to have carried deadly weapons in the past and to have exhibited violent behavior on previous occasions.

■ Collier argues (1) that the suspicion that he was involved in the assault was unreasonable, since he did not match the broadcast description closely enough and (2) that his prior record should not have been a factor to be considered, his violent gang experiences having occurred some years before. We agree that the prior record of a suspect, standing alone, will never justify a *Terry* stop. Where there are other articulable factors, however, a prior record is a legitimate factor to be considered in determining whether there is a sufficient quantum of suspicion to justify a stop. *See United States v. Owens*, 472 F.2d 780, 785–786 (8th Cir.1973).

The description in this case was sufficiently particularized such that it could have applied only to a few persons. When there are several points of comparison possible as a result of a description, a person may still be stopped even if he does not match on all points. An officer must be allowed to take into account the fact that crime victims often are in error as to some points of description, especially where a description is given immediately after a crime of violence has occurred. What must be considered is the strength of those points of comparison which do match up,

and whether those points which do not match are such that an error as to them is not improbable.

In the case before us, Collier matched the broadcast description of the assailant in that he was a white male, of muscular build, with sandy brown hair worn longer than average, wearing a black leather vest and dark pants, and with at least one large tattoo on his arm. Whether a man who is five feet eight inches tall and who weighs 170 pounds is "extremely big" depends upon one's point of view. Hair length and color are also relative. When those points of the description which match are combined with the officers' experience and their knowledge of Collier's background and criminal record, we must conclude that their suspicion that Collier may have been the assailant was not unreasonable.

Therefore, having already concluded that the frisk for weapons was reasonable under the circumstances, we decline to say that the trial court erred in refusing to exclude evidence of the fruit of the search, the handgun, from the trial below. The judgment of the Fayette Circuit Court is accordingly affirmed.

All concur.