Robert TUCKER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2004–CA–002421–MR.

Court of Appeals of Kentucky.

Feb. 17, 2006.

Discretionary Review Denied by
Supreme Court Sept. 13, 2006.

J. Brandon Pigg, Assistant Public Advocate, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Frankfort, Kentucky, for appellee.

Before BUCKINGHAM, JOHNSON, and TACKETT, Judges.

## OPINION

BUCKINGHAM, Judge.

Robert Tucker appeals from a judgment of the Wayne Circuit Court wherein he was convicted of several offenses and was sentenced to 10 years in prison. The judgment was based on a conditional guilty plea entered by Tucker following the denial of his motion to suppress evidence. The issue involves whether the investigatory stop (*Terry* stop) that led to Tucker's arrest and conviction was valid. We affirm.

On December 1, 2003, law enforcement authorities received a phone call from a person identifying himself as Jason Piercy stating that Robert Tucker had been threatening people with a gun, that Tucker was intoxicated, and that Tucker had driven away with a female companion. In addition, the caller described the vehicle Tucker was driving as being a green "Blazer-type" or "Jimmy-type" vehicle.

Shortly thereafter, Wayne County Deputy Sheriff Derek Lester received a call from a police dispatcher relating the information stated above. From our review of the suppression hearing, it appears that the dispatcher did not advise Deputy Lester of the identity of the caller.

Because Tucker was believed to have lived in Horse Hollow Apartments, Deputy Lester began looking for the vehicle in that area. He soon saw a vehicle matching the description he had been given going into the parking lot of the apartment complex. He pulled in behind Tucker's vehicle after it entered a parking space, partially blocking it. Once Tucker and his female companion exited the vehicle, Deputy Lester also exited his vehicle and directed Tucker to come to him.

Deputy Lester testified that Tucker had one of his hands in his pocket as he approached him. He advised Tucker that there had been a call on him and that a gun had been involved. Because Tucker's hand was in his pocket, Deputy Lester grabbed Tucker's arm and asked him where the gun was. Tucker answered that the gun was in his right pocket. Deputy Lester then reached in Tucker's pocket and seized the gun. At that point, he placed Tucker under arrest.

A Wayne County grand jury indicted Tucker on charges of operating a motor vehicle while license is revoked or suspended for DUI, third or subsequent offense; operating a motor vehicle under the influence, fourth or subsequent offense; possession of a firearm by a convicted felon; and second-degree persistent felony offender. Prior to trial, Tucker filed a motion to suppress the evidence. The court conducted a suppression hearing and denied the motion. Thereafter, Tucker entered a conditional guilty plea to the charges and was sentenced to 10 years in prison, reserving his right to appeal from the order denying his suppression motion. His appeal herein followed.

Tucker argues on appeal that the investigatory stop was invalid and that the sub-

sequent search and seizure of the gun was thereby rendered inadmissible as evidence. Thus, he contends that the court erred in denying his suppression motion.

■ In *Collier v. Commonwealth,* 713 S.W.2d 827 (Ky.App.1986), this court acknowledged that "[a]n investigatory stop under *Terry v. Ohio*[1] is permissible on less than full probable cause to arrest where an officer has a reasonable, articulable suspicion that a particular person encountered was involved in or is wanted in connection with a completed felony."[2] *Id.* at 828, *citing United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). "With regard to the factual findings of the trial court 'clearly erroneous' is the standard of review for an appeal of an order denying suppression. However, the ultimate legal question of whether there was reasonable suspicion to stop or probable cause to search is reviewed de novo." *Commonwealth v. Banks,* 68 S.W.3d 347, 349 (Ky.2001), *citing Ornelas v. United States,* 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

■ Tucker's first argument is that the Commonwealth did not establish a reasonable, articulable suspicion of criminal activity sufficient to justify the investigatory stop. He contends that in order for the Commonwealth to have met its burden, it was required to present proof that the dispatcher had articulable facts to support a reasonable suspicion of criminal activity. He notes that the dispatcher did not testify at the suppression hearing and that

Deputy Lester had not been informed of the source of the information related to him in the call he received from the dispatcher.[3]

Tucker's argument that the Commonwealth was required to call the dispatcher to establish reasonable suspicion to justify the stop is based on the *Hensley* case. In *Hensley,* the officers stopped a vehicle based on a "wanted flyer" from another law enforcement agency. The U.S. Supreme Court in that case held that "[a]ssuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop[.]" 469 U.S. at 233, 105 S.Ct. 675, *citing United States v. Robinson,* 536 F.2d 1298 (9th Cir.1976). In the *Hensley* case, the officer who interviewed the informant who provided the information upon which the flyer was issued testified. As Tucker notes, that was not the case here.

Tucker also relies on *Joshua v. DeWitt,* 341 F.3d 430 (6th Cir.2003). In that case, the Sixth Circuit Court of Appeals applied the holding of the *Hensley* case and determined that the continued detention of the defendant at the conclusion of a traffic stop was not justified on the basis of information in a police intelligence information book identifying him as a drug courier. The court reached this determination based on the lack of evidence that the officer who provided the information in the

---

**1.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**2.** Deputy Lester testified that he knew Tucker was a convicted felon and that Tucker was alleged to have a handgun in his possession.

**3.** Tucker states in his brief that his trial attorney did not preserve this argument for our review because his trial attorney did not raise

the absence of the dispatcher as a witness as an argument to the trial court. We conclude, however, that the argument has been properly preserved. The burden to prove the validity of the warrantless search and seizure was on the Commonwealth, and the appellant preserved error by arguing to the court that the evidence was insufficient to support the warrantless search.

book had a reasonable suspicion that the defendant was, in fact, a drug courier. *Id.* at 440. The officer who provided the information in the book did not testify.

We conclude that the facts in this case are distinguishable from those in *Hensley* and *Joshua.* In *Hensley,* the testimony of the person causing the flyer to be issued was necessary to establish reasonable suspicion to justify the stop because the officer who made the stop was acting at the direction of the other law enforcement agency. The grounds for reasonable suspicion were within the knowledge of the agency that distributed the "wanted flyer," not within the knowledge of the officer who detained the defendant pursuant to the flyer. In *Joshua,* the officer decided to detain the defendant following a traffic stop based, in part, on an entry in a police intelligence information book that the defendant was a known drug courier.[4] While *Joshua* differs from *Hensley* in that the officer relied on the information as only one factor in making his decision to detain the defendant, they are similar in that the grounds for the factual conclusion were not within the knowledge of the officer who detained the defendant.

In this case, however, the dispatcher merely transferred information to the officer as to the nature of the call he had received. The dispatcher himself made no determination as to whether there was reasonable suspicion to make the stop. That decision was made by the officer.

In making that determination, Deputy Lester considered the totality of circumstances he faced. First, the officer knew the facts passed through dispatch. Second, he knew that those facts came from an identified, or an identifiable, witness to the action alleged. Third, he had personal

knowledge that Tucker was a convicted felon. Thus, regardless of what actually occurred concerning the prior threats, Deputy Lester was faced with possible ongoing offenses of driving under the influence and of possession of a handgun by a convicted felon. In short, we conclude that the testimony of the dispatcher as a witness was not necessary in order for the court to determine whether there was a reasonable suspicion of criminal activity sufficient to justify the investigatory stop.

■ Tucker's second argument is that the investigatory stop was invalid because the officer was acting on an uncorroborated anonymous tip and therefore did not have a reasonable suspicion of criminal activity sufficient to justify the stop. In support of his argument, he cites *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), and *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

In the *White* case, the Court upheld the investigatory stop based on an anonymous tip that was corroborated by independent police work. 496 U.S. at 332, 110 S.Ct. 2412. The Court stated that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* at 330, 110 S.Ct. 2412.

In the *J.L.* case, the Court held an investigatory stop to be invalid because it was based on an anonymous tip that "lacked the moderate indicia of reliability present in *White."* 529 U.S. at 271, 120 S.Ct. 1375. The tip in that case "provided no predictive information and therefore left police without means to test the informant's knowledge or credibility." *Id.*

---

4. Even if the person causing the entry to be made in the book had testified in the *Joshua* case, we fail to see how the officer could have legally detained the defendant any longer based only on the information that he was a known drug dealer.

The analysis applied in *J.L.* and in *White* began with the fact that the police started with an anonymous tip. Justice Kennedy's concurring opinion in *J.L.* suggests that the analysis changes where the source of the tip is identified or identifiable. *Id.* at 276, 120 S.Ct. 1375. This distinction as to the source of the tip was explored in some detail in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates* the Court noted:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to finding probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scouting of the basis of his knowledge unnecessary. (Internal citations and footnotes omitted.)

462 U.S. at 233–34, 103 S.Ct. 2317. The nature of tips as a basis for *Terry* stops was summed up by the U.S. Supreme Court as follows:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

*Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

In *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), the U.S. Supreme Court stated that "[w]hen discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." 534 U.S. at 273, 122 S.Ct. 744. In the *Ornelas* case, the Court stated that "[a]rticulating precisely what 'reasonable suspicion' ... mean[s] is not possible." 517 U.S. at 695, 116 S.Ct. 1657. Further, the Court has deliberately avoided reducing the principle of reasonable suspicion to "a neat set of legal rules." *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744, *quoting Illinois v. Gates,* 462 U.S. at 232, 103 S.Ct. 2317. In short, "[t]he precise limits on investigatory stops to investigate past criminal activity are more difficult to define." *Hensley,* 469 U.S. at 228, 105 S.Ct. 675.

In this case, Deputy Lester was acting on information provided by a police dispatcher who had received a call from an individual who identified himself and who stated that Tucker had a gun, had been threatening people with it, had been drinking, and was then in his vehicle driving. The U.S. Supreme Court noted in the *Hensley* case "that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." 469 U.S. at 231, 105 S.Ct. 675, *quoting Robinson,*

536 F.2d at 1299. Further, the Supreme Court in the *Adams* case stated:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

407 U.S. at 145–46, 92 S.Ct. 1921 (citations omitted).

The trial court in this case determined that, because the dispatcher did not tell Deputy Lester from whom the call came, the tip was an anonymous one as to Deputy Lester. While the evidence indicates that Deputy Lester did not know the identity of the person making the call, the caller did identify himself to the dispatcher as Jason Piercy. Therefore, this was not an anonymous tip. Rather, it was a tip or information provided by a person who identified himself to the law enforcement agency. The fact the dispatcher did not advise Deputy Lester of the identity of the informant did not mean the tip was an anonymous one.

As a tip from a citizen informant whose identity was known and who was a victim-eyewitness, the tip here was entitled to a greater presumption of reliability than a tip from an anonymous informant. *See United States v. Pasquarille,* 20 F.3d 682, 689 (6th Cir.1994). *See also United States v. Swihart,* 554 F.2d 264, 269 (6th Cir. 1977), and *United States v. Phillips,* 727

F.2d 392, 397 (5th Cir.1984). In short, we conclude that, under the totality of the circumstances, Deputy Lester had reasonable suspicion of criminal activity sufficient to justify the investigatory stop of Tucker.[5]

Once Deputy Lester stopped Tucker, his seizure of the gun from Tucker's pocket was valid. "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Adams,* 407 U.S. at 146, 92 S.Ct. 1921, *citing Terry,* 392 U.S. at 30, 88 S.Ct. 1868. Because Deputy Lester had information that Tucker had been threatening others with a gun and because Tucker was approaching him with his hand in his pocket, Deputy Lester had reason to believe that Tucker was armed and dangerous and, thus, had the right to search for the gun for his own protection.

The judgment of the Wayne Circuit Court is affirmed.

ALL CONCUR.

---

5. Our reliance in this opinion on cases from the federal courts is due to the lack of Kentucky cases addressing this type of fact situation.