RENDERED: JANUARY 24, 2008
TO BE PUBLISHED

𝔖upreme 𝔆ourt of 𝔎entucky

2005-SC-000702-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
CASE NUMBER 2004-CA-001681-MR
HART CIRCUIT COURT NO. 03-CR-00044

CHRISTY C. MORGAN                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE ABRAMSON**

**REVERSING**

Shortly after being told by an anonymous caller that known drug dealers Christy Morgan, Guy Evans, and Dale Mansfield were making methamphetamine in Morgan's residence—a trailer on Hundred Acre Pond Road in Hardyville, Kentucky—two police officers stopped Morgan and Evans as they were driving away from the trailer. A search of Evans revealed a packet of methamphetamine. The officers then obtained Morgan's consent to conduct a search of her trailer, where drugs and other contraband were found. Both Evans and Morgan were subsequently arrested and charged with drug trafficking and related offenses. Prior to trial, Morgan moved to suppress the evidence seized from her trailer on the ground that the initial stop was improper. Following the suppression hearing, the Hart Circuit Court concluded that the arresting officers did have the required particularized suspicion to conduct a stop and denied Morgan's motion. Morgan then entered a conditional guilty plea to several of the

trafficking-related offenses and was sentenced to five years in prison. Morgan appealed, challenging the trial court's suppression ruling. The Court of Appeals reversed, holding that the anonymous tip was not sufficiently corroborated and therefore, did not justify the stop of Morgan and Evans. Upon the Commonwealth's motion, this Court granted discretionary review to consider whether the officers had the requisite reasonable suspicion to conduct an investigatory stop of Morgan and Evans. For the reasons set forth below, we reverse the Court of Appeals and reinstate Morgan's conviction and sentence.

## RELEVANT FACTS

Around 8:00 a.m. on the morning of December 17, 2002, an anonymous woman telephoned Jeff Staples, the Hart County Sheriff, with information about three local residents involved in manufacturing drugs. The woman told Sheriff Staples that her sixteen-year old son had been with Christy Morgan, Guy Evans, and Dale Mansfield all night at Morgan's trailer using methamphetamine. Upon returning home in the morning, her son was still high on drugs. The caller stated that Morgan, Evans, and Mansfield had been manufacturing methamphetamine all night, the drugs were still in the trailer, and the "stuff" used to make the drugs was in the trash outside Morgan's trailer. The caller also told Sheriff Staples that she lived in the same area as Christy Morgan. Staples was familiar with all three suspects' reputations for drug trafficking and drug manufacturing, and he knew that all three had prior drug-related arrests or convictions. Based on the tip and his prior knowledge of the suspects, Staples contacted Kentucky State Police Officer Shannon West for assistance and started driving towards Morgan's residence. When the two officers drove past Morgan's trailer, Evans was standing outside on the porch. Staples testified that Evans clearly saw the officers as they

2

passed. After driving by the residence and noticing Evans, Staples first contacted his deputies for back-up, then turned his vehicle around and headed back toward Morgan's trailer. Before the officers returned, however, Morgan and Evans left the residence in a car, pulling out of the driveway with Evans driving.

After Morgan and Evans were approximately 50 yards away from the driveway, Sheriff Staples pulled his squad car in front of theirs causing them to stop their car. Staples then walked back to the car and, after telling Evans about the anonymous tip he had received, asked Evans if he had been using or making drugs. Evans replied that he had not. When Staples asked Evans if he had any drugs in the car, Evans responded that Staples could check the car. Staples then asked Evans to exit the automobile. Once Evans was outside, Staples patted him down and found a bulge in his pocket that turned out to be methamphetamine. In his further search of Evans, Staples also discovered a ball of crank in his billfold. At this point, Staples placed Evans under arrest. Trooper West then read Morgan her rights and presented to her a consent form giving permission for the officers to search her trailer, which she signed. Inside the trailer, the officers found additional items of contraband. Morgan was eventually indicted by a Hart County Grand Jury for first-degree trafficking and complicity to first-degree trafficking in a controlled substance, first-degree possession and complicity to first-degree possession of a controlled substance, first-degree possession and complicity to first-degree possession of drug paraphernalia, and third-degree trafficking and complicity to third-degree trafficking in a controlled substance.

Before her trial, Morgan moved to suppress the evidence seized from her trailer. On January 6, 2004, following the suppression hearing, the trial judge overruled Morgan's motion, noting that the anonymous tip, Staples's prior knowledge of the

3

suspects, and Evans's and Morgan's driving away from the trailer created reasonable suspicion that they had been or were engaging in criminal activity. Following this denial, Morgan entered a conditional guilty plea, pleading guilty to complicity to first-degree trafficking in a controlled substance, complicity to first-degree possession of a controlled substance, complicity to first-degree possession of drug paraphernalia, and two counts of complicity to third-degree trafficking in a controlled substance. On March 29, 2004, the trial court sentenced Morgan to a total of five years imprisonment for these offenses. Morgan appealed these convictions, and in a 2-1 decision, the Court of Appeals reversed the trial court's suppression ruling and remanded Morgan's case for further proceedings. On appeal to this Court, the Commonwealth argues that the Court of Appeals erred by finding that the anonymous tip was uncorroborated and that the officers did not have reasonable suspicion to stop Morgan and Evans. We agree and reverse, reinstating the trial court's ruling and Morgan's conviction.

## ANALYSIS

In order to uphold the protections of the Fourth Amendment,[1] an officer conducting an investigatory stop must have a reasonable suspicion, based on objective

---

[1]As a preliminary matter, we note that even though Morgan was only a passenger in the car, she nonetheless has standing to challenge the legality of the initial stop of the vehicle. The Sixth Circuit held in U.S. v. Ellis, 497 F.3d 606, 612 (6th Cir. 2007), that "[a]lthough a passenger does not have a legitimate expectation of privacy in the searched vehicle, 'as a passenger [a defendant] may still challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity'" (quoting U.S. v. Ameling, 328 F.3d 443, 447, n. 3 (8th Cir. 2003). See also Whren v. U.S., 517 U.S. 806, 809, 116 S.Ct. 1769, 1772, 135 L.Ed. 2d 89 (1996); Brendlin v. California, --- U.S. ---, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Furthermore, even though nothing was seized from Morgan's person, she still has standing to argue that the alleged illegal stop "tainted" her consent to search the trailer. Kotila v. Commonwealth, 114 S.W.3d 226, 231 (Ky. 2003) (abrogated on other grounds by Matheney v. Commonwealth, 191 S.W.3d 599 (Ky. 2006)) (stating that "a consent given during an illegal seizure or detention can so 'taint' the consequent search as to render its fruits inadmissible"), citing Florida v. Royer, 460 U.S. 491, 507-508, 103 S.Ct. 1319, 1329, 75 L.Ed. 2d 229 (1983).

4

and articulable facts, that criminal activity has occurred, is occurring, or is about to occur. Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed. 2d 357 (1979); U.S. v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed. 2d 621 (1981); See Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 1885, 20 L.Ed. 2d 889 (1968). To determine whether an officer had reasonable suspicion, a court must look at the totality of the circumstances surrounding the officer's decision to conduct an investigatory stop. U.S. v. Cortez, 449 U.S. at 417. Sheriff Staples stated that his stop of Morgan and Evans was based on the totality of three factors: the anonymous tip specifically identifying Morgan, Evans, and Mansfield as engaging in drug-related activity; his prior knowledge about the suspects' drug-related arrests and convictions; and their attempt to elude the police by leaving Morgan's trailer. After considering the totality of the circumstances, we find that Staples's prior knowledge and his observations of Morgan and Evans adequately corroborated the anonymous tip. Therefore, Staples possessed the requisite reasonable suspicion that Morgan and Evans were engaging in criminal activity to justify his investigatory stop.

**Given the Totality of Circumstances, the Officers Had Sufficient Reasonable Suspicion that Criminal Activity was Afoot to Justify the Investigatory Stop.**

**A. Sheriff Staples's Knowledge About the Suspects' Prior Records was a Factor Corroborating the Tip.**

Before an investigating officer can rely on an anonymous tip as part of his basis for reasonable suspicion, that tip must have sufficient indicia of reliability. Hampton v. Commonwealth, 231 S.W.3d 740, 745 (Ky. 2007); See Florida v. J.L., 529 U.S.266, 276, 120 S.Ct. 1375, 1381, 146 L.Ed. 2d 254 (2000); Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed. 2d 301 (1990). Although a truly anonymous tip rarely provides this needed reliability by itself, the United States Supreme Court has

recognized that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" J.L., 529 U.S. at 270, *quoting* White, 496 U.S. at 327. In typical anonymous tip cases, where the tip describes a person previously unknown to the police who is allegedly engaging in criminal activity, this corroboration usually comes from either independent police observations or internal predictive components. *See* Collins v. Commonwealth, 142 S.W.3d 113, 115-116 (Ky. 2004). In this case, however, the tip did not identify an unknown person about whom the police had no prior knowledge. Rather, the tip that Sheriff Staples received named three specific individuals, all of whom Staples knew had a history of committing drug-related offenses, said to be involved yet again in making and distributing methamphetamine. Sheriff Staples's prior knowledge about the named suspects distinguishes this case from the typical anonymous tip cases, giving the tip corroboration.

This Court has held previously that an officer's knowledge about a suspect's prior record can be a relevant factor in the reasonable suspicion analysis. Collier v. Commonwealth, 713 S.W.2d 827, 828 (Ky. 1986). In Collier, the victim of an assault gave a fairly detailed description of her attacker to the police. Id. at 827. During their investigation, two police officers encountered Collier, who roughly matched the victim's description and whom one officer recognized as having previously been arrested for carrying a handgun. Id. at 827-828. The officers conducted a pat-down search of Collier before questioning him. Id. at 828. Although Collier had nothing to do with the assault reported by the victim, the officers found a handgun on him during the pat-down, which led to his arrest and conviction. Id. In finding that the officers had a reasonable, articulable suspicion to stop Collier, this Court stated that "the prior record of a suspect,

6

standing alone, will never justify a <u>Terry</u> stop. Where there are other articulable factors, however, a prior record is a legitimate factor to be considered in determining whether there is a sufficient quantum of suspicion to justify a stop." <u>Id</u>.

Because an officer's prior knowledge is a relevant factor, the tip Sheriff Staples received was corroborated to some extent due to his prior knowledge of the specific people it named and the specific illegal activity it alleged. Staples, who has been the Hart County Sheriff for twenty-three years, was very familiar with Morgan's, Evans's, and Mansfield's reputation for dealing and manufacturing drugs. In the trial court's suppression hearing, Staples stated that he had arrested Morgan on at least one prior occasion for her involvement with drugs, Mansfield had been involved with Morgan for years and had a bad reputation for dealing drugs, and Evans had several charges pending against him for manufacturing drugs. Upon receiving a tip that these three individuals had been making, distributing, and using methamphetamine at Morgan's residence, Staples could not have been expected to ignore his prior knowledge about their drug involvement and proceed as if the tip had identified three strangers. In short, because the tip identified three individuals as engaging in the same type of criminal activity for which they already had prior records, Sheriff Staples's knowledge about their prior records corroborated the tip, rendering it more reliable.

## B. Morgan's and Evans's Attempt to Elude the Police Also Corroborated the Tip.

This anonymous tip was further corroborated by Sheriff Staples's observation upon arriving at Morgan's residence. As Staples drove by Morgan's trailer, Evans was standing on the porch, a fact which corroborated the tip because the caller had stated that Evans had been at Morgan's residence all night. In addition, when the officers returned to Morgan's trailer, they saw both Morgan and Evans leaving the scene, an act

which under the circumstances raised a reasonable suspicion of flight and again corroborated the caller's assertion that illegal activity was afoot. Although the officers never saw Mansfield, the fact remains that two of the three people named by the female caller were present at Morgan's residence the morning after they were alleged to have spent the night making drugs, and that upon seeing the police, those persons immediately attempted to drive away.

Morgan argues that Sheriff Staples should not be able to speculate that she and Evans were attempting to elude the police because their leaving was just as consistent with innocent activity. Although it does not appear from the record that Morgan and Evans were speeding when they pulled out of the driveway, Sheriff Staples nonetheless believed that their leaving was not just a coincidence, but rather an attempt to flee from the police. At the suppression hearing, Morgan's attorney asked Staples if the suspects "were speeding or just pulling out," to which Staples replied, "they were trying to get away." Although Morgan and Evans may have had an innocent motive for leaving the trailer, this Court has held that a police officer is not prevented from "entertaining a reasonable suspicion" that criminal activity is afoot even when the suspect's conduct "may have been as consistent with innocent activity as with criminal activity." Baker v. Commonwealth, 5 S.W.3d 142, 146 (Ky. 1999). In addition, the United States Supreme Court has stated that when evaluating whether an officer has reasonable suspicion, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." U.S. v. Sokolow, 490 U.S.1, 10, 109 S.Ct. 1581, 104 L.Ed. 2d 1 (1989) *quoting* Illinois v. Gates, 462 U.S. 213, 243-244, n. 13, 103 S.Ct. 2317, 76 L.Ed. 527 (1983).

Although two people leaving their residence on a weekday morning is certainly

consistent with noncriminal activity, in light of the totality of the circumstances, Evans's and Morgan's leaving is a relevant factor that added to Sheriff Staples's reasonable suspicion and served to corroborate the anonymous tip. As the trial court stated, "the fact [that] they were attempting to elude the police, or, at the least, to lead the police away from the Morgan mobile home" added to Sheriff Staples's reasonable suspicion that criminal activity was afoot.

## CONCLUSION

The totality of the circumstances in this case included more than a mere anonymous tip. Because the suspects' prior records, which were known by Sheriff Staples, matched the illegal activity alleged in the tip, and because of Staples's own corroborating observations at Morgan's residence, the anonymous tip had sufficient indicia of reliability to justify the investigatory stop of Morgan and Evans. Accordingly, we reverse the Court of Appeals decision and reinstate Morgan's conviction and sentence.

All sitting. Lambert, C.J.; Cunningham, Minton, and Scott, JJ., concur. Noble, J., concurs but would stress that merely leaving one's home after a police car drives by, would never, standing alone, constitute reasonable suspicion to make an investigatory stop. Schroder, J., dissents because the anonymous tip was not sufficiently corroborated under Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) to justify the stop.

COUNSEL FOR APPELLANT:

Jack Conway
Attorney General

Michael L. Harned
Assistant Attorney General
Office of Criminal Appeals
Office of Attorney General
1024 Capital Center Drive
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Samuel N. Potter
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601