RENDERED:  DECEMBER 1, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0113-MR

JON BUECHELE                                                   APPELLANT


APPEAL FROM NELSON CIRCUIT COURT
v.          HONORABLE CHARLES C. SIMMS, III, JUDGE
ACTION NO. 22-CR-00021


COMMONWEALTH OF KENTUCKY                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  Jon Buechele ("Buechele") appeals the denial of his motion to suppress evidence gathered after an investigative stop by a police officer. Buechele entered a conditional guilty plea.  We affirm the Nelson Circuit Court.

## FACTUAL AND PROCEDURAL HISTORY

On the night of December 9, 2021, officer Josh Doerr ("Doerr") of the Bardstown Police Department was in a marked patrol car.  Doerr was patrolling local "hot spots" of criminal activity.  A residence located at 406 East Halstead

Street was considered a drug house. Activities at this address had resulted in numerous recent calls to the police about drug activity, including emergency calls due to overdoses.

Doerr drove southbound on Allison Avenue ("Allison") approaching the intersection with East Halstead Street ("East Halstead"). As Doerr reached that four-way stop, he noticed Buechele walking toward him in the middle of East Halstead. When Doerr first noticed him, Buechele was about twenty to thirty feet from Doerr's vehicle, and perhaps a few houses from 406 East Halstead.

Doerr decided to stop Buechele for disregarding the law prohibiting pedestrians from walking down the middle of a street. Doerr rolled down his window and asked Buechele to approach. Buechele instead turned away and walked southbound down Allison (in the opposite direction from Doerr's vehicle). Doerr exited the patrol car, put on his body camera, and told Buechele to stop. Buechele looked back over his shoulder at Doerr, put his hands in his pockets, and picked up his pace.

Doerr quickly caught up with Buechele and grabbed him from behind. Doerr put his left hand on Buechele's left forearm and his right hand on Buechele's right forearm.[1] Buechele's hands were still in his pockets. Doerr testified he could

---

[1] If Buechele had been armed, which he was not, Doerr's action in grabbing Buechele's arms in this way prevented any issue of a weapon being drawn or evidence being lost while not prematurely frisking Buechele without cause to suspect a weapon.

feel Buechele's forearms and hands tense and flex as he was leading Buechele back to the patrol car. Once they arrived at the patrol car, Doerr felt Buechele pulling his hands out of his pockets. Doerr could feel Buechele's forearms release. Doerr looked down and noticed drugs scattered underneath his patrol car. Buechele then was arrested.

Once Buechele was placed in the patrol car, he asked Doerr if he could smoke a cigarette. Doerr retrieved Buechele's pack of cigarettes for him. Doerr then discovered additional drugs in the cigarette pack.

Buechele was indicted for first-degree trafficking in heroin, first-degree trafficking in methamphetamine, tampering with physical evidence, disregarding a traffic regulation by a pedestrian, and first-degree persistent felony offender. Buechele filed a motion to suppress evidence claiming Doerr unlawfully seized him in violation of the Fourth Amendment.[2] Buechele's motion was heard by the circuit court in October 2022. Doerr and Buechele's mother were the only witnesses to testify.

The testimony conflicted as to whether there was a sidewalk running along East Halstead. Doerr remembered a sidewalk at the intersection of East Halstead and Allison, whereas Buechele's mother, who lives several blocks from

---

[2] Section 10 of the Kentucky Constitution provides the same protection as the Fourth Amendment in the circumstances of this case. *See Commonwealth v. Reed*, 647 S.W.3d 237, 243 (Ky. 2022).

the intersection, denied the existence of a sidewalk.[3] As the circuit court correctly observed, the existence of a sidewalk was not decisive in the circumstances which we will address.

Doerr testified his body camera did not start recording until a few minutes into the incident. The parties, who apparently had seen what the video showed, chose not to introduce the footage as evidence. At the close of the hearing, the circuit court provided the parties time to file memoranda in support of their respective positions.

The circuit court issued its Findings of Fact, Conclusions of Law, and Order denying Buechele's motion. The court determined Doerr had the required articulable and reasonable suspicion to stop and question Buechele because he was walking down the middle of the street in violation of KRS[4] 189.570(14). The court found it was immaterial whether there was a sidewalk running parallel to East Halstead as it was unrefuted that Doerr observed Buechele walking in the middle of the street. The court added, "Buechele's walking path was obviously dangerous

---

[3] We decline the invitation to take judicial notice of a Google map from the internet offered by Buechele, but which was not made part of the circuit court record. While judicial notice should rarely be utilized to supplement a record on appeal, an appellate court could take judicial notice of Google or similar images to confirm a location or other unarguable circumstances. *United States v. Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012). But we are especially hesitant to take such notice when an image is offered to establish a fact dependent on the condition of property on a certain date, such as when sidewalks were present. It would be better practice to have a witness confirm the accuracy of the image for the relevant time.

[4] Kentucky Revised Statutes.

for himself and any motorist who may have been using this roadway, especially with it being dark."

After the unsuccessful motion to suppress, Buechele entered a conditional guilty plea to two counts of first-degree possession of a controlled substance and one count of tampering with physical evidence. Buechele's other counts were dismissed, and he received a three-year sentence. This appeal followed.

## STANDARD OF REVIEW

"When reviewing a ruling on a suppression motion, we defer to the trial court's findings of fact if they are not clearly erroneous. Findings of fact are not clearly erroneous if they are supported by substantial evidence." *Commonwealth v. Jennings*, 490 S.W.3d 339, 346 (Ky. 2016). Buechele does not challenge the circuit court's findings of fact; instead, he disputes the circuit court's application of the law to the facts. An appellate court reviews a circuit court's application of the law to the facts *de novo*. *Id.*

## ANALYSIS

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006). When an officer detains a person for an

investigative or *Terry* stop,[5] which is distinguished from an arrest, the officer "must have a reasonable suspicion, based on objective and articulable facts, that criminal activity has occurred, is occurring, or is about to occur." *Commonwealth v. Morgan*, 248 S.W.3d 538, 540 (Ky. 2008).

Determining whether an officer had reasonable suspicion to stop an individual is based upon the totality of the circumstances. *Id.* When an officer observes a violation, there is more than suspicion, because criminal activity, even if relatively minor, has occurred. *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001). A pretext of believing drug activity is also going on does not invalidate the stop for the observed violation. *Id*.

In this case, it is likely Doerr was looking for drug activity, and the jaywalking[6] violation gave him the legal reason to stop Buechele. Proximity to a known drug house alone would not have been sufficient justification to stop Buechele. *See Strange v. Commonwealth*, 269 S.W.3d 847, 852 (Ky. 2008). Whatever the legal reason for a stop: "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the

---

[5] An investigative stop or temporary detention is often called a "*Terry* stop" after *Terry v. Ohio*, 392 U.S. 1, 88 S .Ct. 1868, 20 L. Ed. 2d 889 (1968).

[6] The word jaywalk originates in Kansas. Jay was a word for a rube or country bumpkin. A jaywalker was considered foolish for endangering themselves by walking across or on streets against established traffic regulations. *Why Jaywalking is Called Jaywalking*, MERRIAM WEBSTER, https://www.merriam-webster.com/wordplay/why-is-it-called-jaywalking (last visited Nov. 13, 2023).

stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983).

Buechele cites *Commonwealth v. Wilson*, 625 S.W.3d 252 (Ky. App. 2021), which he insists dictates a result in his favor. In *Wilson*, two police officers were patrolling in an unmarked police vehicle when they observed the defendant ("Wilson") riding a bicycle on an unoccupied public sidewalk in violation of a local ordinance. The officers followed Wilson in their vehicle. Wilson did not stop in response to lights and sirens. *Id.* at 253.

One of the officers jumped from the vehicle and began chasing Wilson on foot. The officer yelled "stop" but did not identify himself as a police officer. The officer eventually wrestled Wilson to the ground and put a gun to his head. The officer searched Wilson and discovered a gun. Wilson was arrested for misdemeanor fleeing and evading the police and a felony of possession of a handgun by a convicted felon. *Id.* at 254.

The decision in *Wilson* resulted from the issues presented by the parties. Significantly, the Commonwealth had argued on appeal only that a warrant for an **arrest** was not required because Wilson committed a crime in the officers' presence as prescribed by KRS 431.005(1)(d), specifically the misdemeanor of fleeing and evading. 625 S.W.3d at 255. But fleeing and evading requires proof of flight upon suspicion that a **crime** has been committed.

This Court determined the Commonwealth failed to show either officer had an articulable and reasonable suspicion Wilson had committed any level of crime as defined for that statute when he was directed to stop. *Id.* at 255. This Court noted KRS 500.080(2) defines a "crime" as either a misdemeanor or a felony, and that a violation of a city ordinance is neither. 625 S.W.3d at 255-56. The Court concluded that the Commonwealth did not allege the officers suspected Wilson committed any offense other than riding his bicycle on the sidewalk, and as a result, the officers were without authority to arrest Wilson for fleeing and evading, which is the justification they had argued. *Id.* at 256.

*Wilson* is clearly distinguishable. Buechele is correct that Doerr did not have the authority to **arrest** Buechele for the pedestrian violation. But Doerr did have the authority to **detain** Buechele to issue a citation for the observed violation. Doerr asked Buechele to approach his car, but Buechele turned from him and walked away in the opposite direction. Doerr caught up with Buechele and brought him back to the police car. While seized for purposes of a detention, Buechele was not yet arrested. Doerr's original purpose of stopping Buechele for the pedestrian violation had not concluded when Buechele jettisoned the drugs for Doerr to plainly see. At that point, Doerr had probable cause to arrest Buechele for the felony offenses of drug possession and tampering, crimes which Doerr observed.

To interpret the circumstances of *Wilson* to prohibit even a *Terry* stop for anything less than a misdemeanor crime would render a substantial body of law invalid. For example, observing a seatbelt violation justifies a *Terry* stop, even though an individual may not be arrested and jailed for that violation. *See Rhoton v. Commonwealth*, 610 S.W.3d 273, 278 (Ky. 2020).

In this case we are not dealing with just a local ordinance about bicycles on sidewalks. We are applying a state statute governing pedestrians. KRS 189.570 (12)-(14). If there is a sidewalk, pedestrians must use it instead of the street. If there is no sidewalk and there is a shoulder, they must use that. If neither sidewalk nor shoulder is available, the pedestrian must walk as near to the side of the road as possible. For multiple lane roads, they must walk on the left side (thus facing oncoming traffic). A violator may be fined between $20 and $100. KRS 189.990(1). A seatbelt violation by contrast is subject to only a $25 fine and no court costs.

Kentucky's appellate courts have not had occasion to address detention of jaywalkers under our statute. Cases from across the country establish that jaywalking is like other observed violations. A person may be detained for the observed violation. As with other stops, the stop should not last longer than necessary to complete the issuance of a citation. *See, e.g.*, *Oregon v. Jiminez*, 353

P.3d 1227 (Or. 2015); *Hawaii v. Barros*, 48 P.3d 584 (Haw. 2002); *Ohio v. Ewing*, 95 N.E.3d 1112 (Ohio Ct. App. 2017).

## CONCLUSION

Doerr observed a violation and was justified in detaining Buechele. During the brief detention and before Doerr had the time to even write a citation, Buechele provided grounds to justify further detention and eventual arrest for felony crimes. The discovery of the narcotics by Doerr was not the result of an unreasonable seizure and search. The Nelson Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky