RENDERED: MARCH 22, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000558-DG

DATE 4/12/18 Kim Redmon, DC

COMMONWEALTH OF KENTUCKY                                     APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2015-CA-000920-MR
FRANKLIN CIRCUIT COURT NO. 14-CR-00299


JOHN E. SMITH, JR.                                          APPELLEE


### OPINION OF THE COURT BY JUSTICE VENTERS

### AFFIRMING

The Commonwealth appeals from a Court of Appeals' decision which upheld the trial court's suppression of evidence discovered as a result of a canine sniff search of Appellee's, John E. Smith, vehicle during a traffic stop. The Commonwealth contends that the Court of Appeals erred by concluding that 1) the sniff search improperly extended the traffic stop; 2) the traffic stop was the only legal justification for stopping Appellee; and 3) the Commonwealth failed to preserve for appellate review its claim that Appellee's parole status alone permitted police to conduct a warrantless, suspicionless search of his vehicle.

We granted discretionary review. For the reasons stated below, we affirm the Court of Appeals' decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Franklin County Sheriff's Detective Richard Qualls had been surveilling Appellee for about three weeks trying to corroborate tips received from confidential informants that Appellee had been trafficking in cocaine at a bar in Frankfort. Qualls knew that he lacked probable cause to arrest Appellee on drug trafficking charges. On the evening of Appellee's arrest, Qualls followed in an unmarked police car as Appellee left his workplace in his SUV, went to his residence, left the residence, and then drove to a gas station where he interacted with another resident of his apartment building who leaned into the passenger-side window.[1] Qualls watched Appellee drive back to his apartment and then leave again a few minutes later in a different vehicle. Eventually, Qualls saw Appellee turn without using his turn signal.

Because Qualls was in plain clothes and driving an unmarked car with no emergency lights or siren, he did not attempt to stop Appellee. Instead, he had prearranged for canine officer Eaton to be on standby, briefed on the situation and ready to respond. Qualls radioed Eaton to inform him of Appellee's improper turn. Eaton responded immediately by stopping Appellee's vehicle. He introduced himself as the sheriff's office canine handler, and he

---

[1] Another officer, Captain Wyatt of the Franklin County Sheriff's Office, also surveilled Appellee from another vehicle. He saw the other resident lean into Appellee's car window.

2

informed Appellee that he was stopped for failure to use his turn signal; an allegation which Appellee denied. Eaton asked Appellee if illegal drugs were in his car, and Appellee said there was none. Eaton described Appellee as fully cooperative but nervous. Eaton went back to his cruiser to get the drug dog and then commenced a sniff search around Appellee's car. When the dog alerted at the driver's door, Eaton asked Appellee to exit the vehicle. He searched Appellee's car and found seven grams of cocaine tucked between the front seats. He then arrested Appellee, searched his person, and found $4,299.00 in his wallet. According to the uniform citation issued by Eaton, eight minutes passed from the time of the traffic violation to the time Appellee was arrested. The citation also noted that Appellee appeared nervous when asked about the presence of drugs.

Appellee was indicted for first-degree trafficking in cocaine, second or greater offense, greater than or equal to four grams of cocaine. He moved to suppress the evidence obtained during the search of his vehicle and his person. He argued that the traffic stop was not legal because the alleged traffic violation did not occur in Eaton's presence, and the officers did not have a reasonable, articulable suspicion of illegal activity to justify the initial investigative stop of the vehicle.

The trial court concluded that Qualls and Eaton together did not have sufficient knowledge of criminal activity to authorize the initial stop, and that the only valid basis for the stop was the alleged turn signal violation which Eaton did not witness. The trial court also concluded that Eaton's continued

3

detention of Appellee to conduct the dog sniff search exceeded what was reasonably necessary to achieve the purpose of the traffic stop, and for that reason, too, the warrantless search was unreasonable. Consequently, the trial court suppressed the cocaine discovered in the car and the cash found in Appellee's wallet.

After the Commonwealth moved to alter, amend, or vacate the suppression order, the trial court reiterated that "[r]egardless of the circumstances imputing probable cause from one police officer to another, it is clear to the Court that the Defendant was detained during the stop longer than necessary to dispose of the alleged traffic violation." The trial court maintained its initial conclusion that Qualls' long surveillance of Appellee produced nothing of substance to justify a reasonable suspicion that Appellee was engaged in illegal drug activity on the occasion of the traffic stop.

The Commonwealth appealed the suppression order. The Court of Appeals agreed that the collective knowledge rule permitted Eaton to rely upon Qualls' observation of the turn signal violation, and so, it held that the stop of Appellee's vehicle was justified. Nevertheless, the Court of Appeals agreed with the trial court's conclusion that the police officers' collective knowledge of Appellee's criminal record and informants' reports of his drug-dealing activity were insufficient to justify a *Terry*[2] stop of his vehicle, and that nothing happened during the stop to generate a reasonable and articulable suspicion

---

2 *Terry v. Ohio*, 392 U.S. 1 (1968).

4

that Appellee was engaging in criminal activity.[3] The Court of Appeals also agreed with the trial court that the drug sniff search improperly exceeded the scope of the traffic stop without reasonable cause and that the dog sniff unreasonably prolonged the traffic stop.

Finally, upon grounds that the issue had not been preserved for appellate review, the Court of Appeals refused to consider the Commonwealth's claim that as an active parolee, Appellee's Fourth Amendment rights were curtailed and the warrantless, suspicionless search of his person and vehicle was proper.

We granted discretionary review, and for reasons stated below, we affirm the decision of the Court of Appeals.

## II. ANALYSIS

When reviewing a trial court's ruling on a motion to suppress evidence, we defer to the trial court's findings of fact to the extent they are supported by substantial evidence and are not clearly erroneous. We review the trial court's conclusions of law de novo. *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016) (citations omitted). Here, the trial court's factual findings have not been challenged,[4] so our review is essentially de novo, resting upon the facts determined by the trial court.

---

[3] The Court of Appeals specifically noted that Appellee's nervousness during the officer's questioning was not sufficient to create such suspicion.

[4] The Commonwealth does challenge the trial court's failure to specifically address the significance of Appellee's parole status, an argument we address below in Section C.

5

## A. THE TRAFFIC STOP WAS VALID UNDER THE COLLECTIVE KNOWLEDGE DOCTRINE, BUT APPELLEE'S DETENTION WAS UNREASONABLY PROLONGED

The Court of Appeals agreed with the Commonwealth that Deputy Eaton was authorized to stop Appellee for the traffic violation witnessed only by Deputy Qualls and communicated by radio to Eaton.[5] Although Appellee does not challenge the Court of Appeals on this issue, we note that since the Court of Appeals rendered its decision, this Court addressed the same question in *Lamb v. Commonwealth*, 510 S.W.3d 316 (Ky. 2017).

We said in *Lamb* that "[u]nder the collective knowledge doctrine, an arresting officer is entitled to act on the strength of the knowledge communicated from a fellow officer and he may assume its reliability provided he is not otherwise aware of circumstances sufficient to materially impeach the information received." 510 S.W.3d at 323 (citing *Hensley*, 469 U.S. at 232-233;

---

[5] The trial court's initial suppression order rejected application of the collective knowledge rule, but in response to the Commonwealth's motion to alter, amend, or vacate that order the trial court corrected itself in that regard, citing *Commonwealth v. Vaughn*, 117 S.W.3d 109 (Ky. App. 2003) (agreeing that law enforcement officers may rely on the collective knowledge of other officers) and *United States v. Lyons*, 687 F.3d 754, 765-766 (6th Cir. 2012) ("It is well-established that an officer may conduct a stop based on information obtained by fellow officers." (citing *United States v. Barnes*, 910 F.2d 1342, 1344 (6th Cir. 1990); *United States v. Hensley*, 469 U.S. 221, 229 (1985))). However, after reviewing the radio transmissions between the officers, the trial court further concluded that the communication between the officers did not support a finding that Qualls relayed his observation of Appellee's traffic violation to Eaton. Consequently, since Eaton had not observed a traffic violation himself, the trial court concluded the stop for a traffic violation was not valid. The Commonwealth does not challenge the trial court's amended findings of fact and conclusion of law that the radio transmission between Qualls and Eaton did not support Qualls' testimony that he relayed his own observations to Eaton and as such, the collective knowledge rule was not applicable in this case. As this finding and conclusion are not challenged, we do not address them in this appeal.

6

*Darden v. Commonwealth*, 298 S.W.2d 687, 689 (Ky. 1957)).[6] *Lamb* specifically held that an arrest for a felony offense was properly based upon probable cause known to one officer and relayed to another who actually made the arrest. We agree now that the same rule applies to authorize a traffic stop for a violation committed in the presence of one officer who then relays that information to another officer who actually executes the stop. Consequently, Qualls' contemporaneous report to Eaton that he had observed Appellee violate a traffic law vested Eaton with the authority based upon probable cause to stop Appellee's vehicle.

Eaton's stop of Appellee's vehicle was proper; but a valid traffic stop can become unlawful if it is prolonged beyond the time reasonably required to issue a traffic citation. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The trial court, citing *Turley v. Commonwealth*, 399 S.W.3d 412 (Ky. 2013),[7] *Caballes*, and *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015),[8] and the Court of Appeals, citing *Turley*, concluded that Eaton's dog sniff search unlawfully prolonged the stop beyond the time reasonably required to complete the traffic stop's mission. The Court of Appeals noted that Eaton did none of the routine matters associated with a traffic stop, including the issuance of a citation,

---

[6] *Lamb*, rendered February 16, 2017, was decided after the September 16, 2016 Court of Appeals' decision. *Lamb* was not mentioned in the briefing for this Court. Prior to *Lamb*, in *Brumley v. Commonwealth*, 413 S.W.3d 280, 286 (Ky. 2013), "[w]e recognize[d] that the transmission of collective knowledge between investigating and arresting officers is crucial to the success of law enforcement."

[7] *Turley* was cited in the order granting Appellee's motion to suppress.

[8] *Caballes* and *Rodriguez* were cited in the order denying the Commonwealth's motion to alter, amend, or vacate.

7

while he conducted the sniff search. The Commonwealth contends that Eaton's sniff search did not unreasonably extend the time of Appellee's detention beyond what would reasonably be necessary to effectuate the purpose of the stop since Eaton could not have run a license and registration check or completed the citation paperwork in the time taken to conduct the sniff search. What the Commonwealth overlooks is that Eaton conducted the sniff search *instead* of conducting the usual procedures incidental to a routine traffic stop.

Prolonging a stop beyond what is reasonably required to complete the stop's mission violates the Fourth Amendment's proscription against unreasonable seizures. *Rodriguez*, 135 S. Ct. at 1616 (citing *Caballes*, 543 U.S. at 407). The legitimate purpose of the traffic stop, Eaton's proper mission, was to cite Appellee for making an improper turn. "[W]hen tasks tied to the traffic infraction are—or reasonably should have been—completed," further detention of the driver is unreasonable. *Id.* at 1614 ("[I]n determining the reasonable duration of a stop, 'it [is] appropriate to examine whether the police diligently pursued [the] investigation.'" (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985))). Significantly, instead of diligently pursuing the purpose of the traffic stop, Eaton seemingly abandoned the legitimate purpose of issuing a traffic citation because he immediately asked Appellee about drugs and launched the dog's sniff search. "The critical question [is] whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop.'" *Id.* at 1616. Obviously, the search added time to the stop because it was conducted before

8

the purpose of the stop was addressed. Indeed, along with the other undisputed facts of record, it is apparent that the traffic stop was anticipated as an advantageous opportunity to conduct a sniff test for drugs, rather than the genuine enforcement of traffic laws.

The Commonwealth cites *Davis v. United States*, 564 U.S. 229 (2011),[9] for the proposition that to the extent *Rodriguez* changed the state of the law, it should not be applied retroactively to this case. The Supreme Court in *Rodriquez* granted certiorari to resolve the question whether police, absent reasonable suspicion, may routinely extend an otherwise-completed traffic stop in order to conduct a dog sniff search. 135 S. Ct. at 1614. The case is introduced with the statement, "A seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." 135 S. Ct. at 1612 (quoting *Caballes*, 543 U.S. at 407). *Rodriguez* did not change the law, it simply applied preexisting Fourth Amendment case law to the circumstances presented.

Under the circumstances of this case, as reflected in the trial court's findings, we cannot conclude that Eaton "diligently pursued" the traffic violation. Eaton did nothing to advance the traffic stop's mission—a citation for not using a turn signal. *Cf. Caballes*, 543 U.S. 405. We reject the

---

[9] "[T]he harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity.' Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." 564 U.S. at 241 (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)).

9

Commonwealth's argument that Eaton avoided the *Rodriguez* problem simply by deploying the dog at the beginning of the stop, before addressing the traffic violation, instead of at the end of the stop after addressing the traffic violation. If the traffic citation was deferred to complete the sniff search, then the officer did not act with reasonable diligence to pursue the legitimate object of the traffic stop. Either way, the stop was prolonged beyond what was reasonably needed to complete the purpose of the stop. Eaton deferred the issuance of the citation to conduct the dog sniff search, and thereby unreasonably prolonged the stop, albeit for a very brief time. "There is no '*de minimis* exception' to the rule that a traffic stop cannot be prolonged for reasons unrelated to the purpose of the stop." *Davis*, 484 S.W.3d at 294. "[A]n officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop unless something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity [is] afoot." *Turley*, 399 S.W.3d at 421 (citation and internal quotes omitted).

## B. BUT FOR THE TRAFFIC VIOLATION, THE OFFICERS LACKED A REASONABLE, ARTICULABLE SUSPICION OF ILLEGAL CONDUCT TO JUSTIFY THE STOP OF APPELLEE'S VEHICLE

The Commonwealth asserts that, independent of their authority to stop Appellee's vehicle for a traffic law violation, Eaton and Qualls were also authorized to stop Appellee based upon a reasonable suspicion that Appellee had illegal drugs in his vehicle. Under that theory, the *Rodriquez/Davis* analysis would be unnecessary. The Commonwealth contends that the collective knowledge of Qualls and Eaton about Appellee's criminal history and

the confidential informants' reports of Appellee's trafficking in cocaine supplied Eaton with a reasonable suspicion to stop Appellee for illegal drug activity, thereby redefining the original purpose of the stop as a drug investigation by which Appellee was properly subjected to the sniff search. We disagree.

Certainly, a police officer may rely on the collective knowledge doctrine when initiating an investigative stop, *see Lamb*, 510 S.W.3d 316, but in this instance, the trial court and the Court of Appeals correctly concluded that the totality of the circumstances known to the officers did not support a particularized and objective belief that Appellee was involved in criminal activity at the time he was stopped and searched, *Bauder v. Commonwealth*, 299 S.W.3d 588, 591 (Ky. 2009) (citing *United States v. Cortez*, 449 U.S. 411, 417-418 (1981)). An investigatory stop is authorized under the Fourth Amendment when the officer has a reasonable suspicion, based on objective and articulable facts, that criminal activity has occurred, is occurring, or is about to occur. *Brown v. Texas*, 443 U.S. 47, 51 (1979) (citations omitted). We look at the totality of the circumstances presented to the officer to determine whether an officer had reasonable suspicion to conduct the stop. *Cortez*, 449 U.S. at 417.

The Commonwealth proffers two circumstances known to the officers before the stop as support for its argument that a reasonable, articulable suspicion of drug trafficking existed to authorize the investigatory stop, even

11

without the traffic violation.[10] First, the Commonwealth notes that the officers had information from reliable confidential informants that Appellee had trafficked in cocaine at a Frankfort bar. Specifically, the informants provided Appellee's name, alias, residence, vehicles, employment, and the bar Appellee frequented for transacting cocaine sales. Qualls' surveillance confirmed some of that information. Second, the officers knew that Appellee was on parole for a previous conviction for trafficking in cocaine. Assuming the reliability of the informants, which we have no reason to doubt, that accumulation of information does not create a reasonable belief that Appellee had cocaine in his car when he was stopped.

As the trial court noted, Qualls did not observe any suspicious activity while he surveilled Appellee for an extended period during the day of the stop and the Commonwealth admitted that the officers were looking for a traffic violation to provide a pretext basis to stop Appellee's vehicle. Qualls described none of the typical observations ordinarily indicative of suspicious drug-related activity. There was no complaint from neighbors about suspicious activity at Appellee's apartment or reports of numerous people coming and going from Appellee's residence. There was no controlled buy of cocaine from Appellee to

---

[10] The Commonwealth also cites Appellee's nervousness when questioned about the presence of drugs as a third circumstance allowing the stop's extension to conduct the canine sniff search. But Appellee's nervousness was not a circumstance known prior to the stop, so it cannot contribute to the accumulation of information that might otherwise add up to reasonable suspicion for initiating a *Terry* stop.

12

corroborate the informants' tips. There was no indication that Appellant was using his car to transport cocaine.

In *Commonwealth v. Morgan,* we recognized that "an officer's knowledge about a suspect's prior record can be a relevant factor in the reasonable suspicion analysis." 248 S.W.3d 538, 541 (Ky. 2008) (citing *Collier v. Commonwealth,* 713 S.W.2d 827, 828 (Ky. App. 1986)). If there are other articulable factors, "a prior record is a legitimate factor to be considered in determining whether there is a sufficient quantum of suspicion to justify a stop." *Id.* at 541–542 (quoting *Collier,* 713 S.W.2d at 828). However, "the prior record of a suspect, standing alone, will never justify a *Terry* stop." *Id.* at 541. The officers' knowledge that Appellee had been convicted of and was then on parole for trafficking in cocaine does not support reasonable, articulable suspicion that he was in possession of cocaine at the time of the stop, and the confidential tips that he was known to be trafficking at a nearby bar did not provide sufficient additional information to create a reasonable suspicion to conduct the stop, or to extend the otherwise lawful stop to conduct the search.

The Commonwealth cites *Commonwealth v. Bucalo,* 422 S.W.3d 253, 260 (Ky. 2013), as support for its contention that officers conducting a traffic stop may acquire during the execution of the stop additional information that justifies a search beyond what was known when the stop began. We do not disagree. We simply conclude, as did the trial court and the Court of Appeals, that nothing happened before Eaton launched the dog sniff search that transformed the situation from a routine stop for a traffic infraction into a drug

13

trafficking case. The only additional factor cited is Appellee's apparent nervousness. While that is certainly part of the totality of circumstances to be examined, *Adkins v. Commonwealth*, 96 S.W.3d 779, 788 (Ky. 2003), it is, nevertheless, not uncommon during a traffic stop[11] and will not create a reasonable suspicion when paired with other facts which otherwise do not constitute a reasonable suspicion to search for drugs. As the facts here did not support a reasonable suspicion for an investigative stop based upon a suspicion that the vehicle contained drugs, Appellee's nervousness after being stopped does not change the analysis.

## C. THE COMMONWEALTH'S CLAIM THAT APPELLEE'S PAROLE STATUS SUBJECTED HIM TO A WARRANTLESS AND SUSPICIONLESS SEARCH AND SEIZURE WAS NOT PRESERVED FOR REVIEW

The Commonwealth argued before the Court of Appeals that under *Bratcher v. Commonwealth*, 424 S.W.3d 411 (Ky. 2014), and *Samson v. California*, 547 U.S. 843 (2006), Appellee's status as parolee was sufficient to subject him to a warrantless and suspicionless search and seizure. The Court of Appeals declined to address the issue on the grounds that it was not preserved for appellate review. The Commonwealth cites that conclusion as error requiring reversal.

We recognized in *Bratcher* that the Fourth Amendment affords less protection to parolees and probationers. We also recognized that other factors, such as the specific terms of orders of probation and parole, and applicable

---

[11] *See United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997).

14

regulations, such as Department of Corrections Policy No. 27–16–01 II(D), must also be considered. *Bratcher*, 424 S.W.3d at 415.

Although Appellee's parole status was part of the evidentiary record before the trial court, the Commonwealth did not argue that his status as a parolee made him subject to a warrantless and suspicionless search and seizure. Consequently, the trial court made no specific findings relating to Appellee's parole status or his susceptibility to a warrantless, suspicionless search on account of that status. The Commonwealth complains that the trial court's findings of fact are, therefore, incomplete, arbitrary, and clearly erroneous, since Appellee's parole status was clearly a determinative fact.

RCr 8.20(2) plainly states that "[w]hen factual issues are involved in deciding [the suppression] motion, the court shall state its essential findings on the record." Nevertheless, even if Appellee's parole status was as determinative as the Commonwealth now contends, it was obliged to raise the omission by motion under CR 52.02 asking the trial court to make the additional findings and amend its order accordingly. The Commonwealth did not do so.

An appellate court may decide only those issues which were fully presented to the trial court. *Combs v. Knott County Fiscal Court*, 141 S.W.2d 859, 860 (Ky. 1940). "[B]y requiring that trial counsel focus the trial court's attention on a purported error by specifically identifying it, the rule makes sure that there is a discrete decision for an appellate court to review." *Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011). "The appellate court reviews for errors, and a nonruling cannot be erroneous when the issue has not been

15

presented to the trial court for decision." *Hatton v. Commonwealth,* 409 S.W.2d 818, 819–820 (Ky. 1966) (citation omitted). The Commonwealth's failure to raise this omission of what it regards as a critical finding of fact in the trial court precludes appellate review of the omission. Consequently, we can find no error in the decision of the Court of Appeals to conclude its appellate review without consideration of the omitted fact.

### III. CONCLUSION

For the reason set forth above, we affirm the opinion of the Court of Appeals.

All sitting. All concur. Cunningham, J., also concurs by separate opinion in which Keller and Venters, JJ., join.

CUNNINGHAM, J., CONCURRING: I concur in the majority opinion. I only write to fire a shot across the bow.

It is well settled law, as well as common sense, that law enforcement is authorized to stop and cite drivers upon our public highways for traffic violations. This includes such minor infractions as obstructed license plate, failure to use turn signal, faulty tail lights, and many more.

However, these stops are not akin to the shaking down of cars and people at border crossings.

The use of large police dogs straining at their leashes and directed in their foraging by uniform policemen are needed at times. But they are always intimidating. Neither a driver, nor a vehicle stopped only for a simple traffic violation, should be subject to this invasion without the officer having acquired

16

articulable suspicion that some other mischief is afoot. Therefore, I do not support the use of canine inspection of vehicles without the circumstances reaching such a level, even if done simultaneously with the processing of the traffic stop and without any delay of that purpose. It may not be a violation of the U.S. Constitution. But we have our own collective conscience in the Commonwealth of Kentucky as proudly asserted in Section 10 of our state constitution.

I realize that this practice in not normally utilized with our typically Ozzie and Harriet family on the way to the beach. The subjects are usually not our best citizens, and there may be, in fact, a high likelihood that some other crime is being committed. However, our sacred pledge of equal "justice for all" is not reserved for hollow recantations at public gatherings.

Keller and Venters, JJ., join.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Larry Wayne Cleveland
Zachary Becker
Special Assistant Attorneys General

COUNSEL FOR APPELLEE:

Willie Edward Peale, Jr.
219 St. Clair Street, Suite 7
Frankfort, Ky 40601-1844