RENDERED:  MARCH 26, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0131-MR

MICHAEL LEE GILES                                             APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.       HONORABLE LUCY ANNE VANMETER, JUDGE
ACTION NO. 19-CR-00337

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, MCNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Michael Lee Giles brings this appeal from a January 15,

2020, Amended Final Judgment and Sentence of Imprisonment of the Fayette

Circuit Court sentencing him to a total of ten-years' imprisonment.  We reverse

and remand.

In March of 2019, Giles was indicted by a Fayette County Grand Jury

upon trafficking in a controlled substance in the first degree, promoting contraband

in the first degree, possession of a controlled substance in the first degree, possession of drug paraphernalia, and with being a persistent felony offender in the first degree. Following the indictment, Giles filed a motion to suppress evidence seized from the vehicle that he was a passenger in, which formed the basis for his indictment.

The circuit court conducted an evidentiary hearing upon Giles' motion to suppress. The only witness to testify at the hearing was Officer Alec Hood. In its October 22, 2019, order denying the motion to suppress, the circuit court determined that Hood had prolonged the traffic stop beyond the time reasonably necessary to complete the stop. However, the circuit court ultimately determined Hood had reasonable suspicion of criminal activity to prolong the traffic stop based upon a radio call from a narcotics detective that a white Nissan Altima had just left a known drug house after being there for only five minutes. Regarding Hood's reliance on the information from the narcotics detective, the circuit court stated the following:

> The Court may consider factual information observed by, and told to, Officer Hood. *See Commonwealth v. Smith*, 542 S.W.3d 276, 281 (Ky. 2018) (. . . holding the collective knowledge doctrine applies to traffic stops, the Court noted, "'[u]nder the collective knowledge doctrine, an arresting officer is entitled to act on the strength of the knowledge communicated from a fellow officer and he may assume its reliability provided he is not otherwise aware of circumstances sufficient to materially impeach the information received.'" ([C]itations omitted[.]))

October 22, 2019, order at 6.

Following the circuit court's denial of his motion to suppress, Giles reached a plea agreement with the Commonwealth. Pursuant to the plea agreement, Giles entered a conditional guilty plea to possession of a controlled substance in the first degree, promoting contraband in the first degree, and being a persistent felony offender in the first degree. Kentucky Rules of Criminal Procedure (RCr) 8.09. Giles preserved the right to appeal the denial of his motion to suppress. Giles was sentenced to a total of ten-years' imprisonment. This appeal follows.

The events leading to Giles' arrest and subsequent indictment occurred on the afternoon of January 8, 2019. A narcotics detective put out a radio call asking officers to stop a white Nissan Altima that just left a house known for drug activity on Locust Avenue. Officer Hood was on Locust Avenue and spotted a white Nissan Altima. Hood began to follow the Altima and noticed the tag on the license plate was expired. Hood initiated a traffic stop of the Altima around 1:41 p.m. Before exiting his police cruiser to approach the Altima, Hood turned on his body camera. Unfortunately, the quality of sound on the video recording is often poor.

When Hood approached the Altima on the passenger's side where Giles was seated, Hood asked the driver for his driver's license. The driver

responded that he did not have his license with him, but the driver provided his social security number. Officer Hood did not ask for the driver's name, and he did not provide it. The passenger, Giles, said he did not have a driver's license, but he provided a state-issued identification card. Hood also asked for the vehicle registration and proof of insurance. Giles responded that the vehicle belonged to his aunt, Karen, and he provided the insurance card. Giles could not locate the vehicle registration.

Officer Hood returned to his cruiser and radioed the narcotics detective to inform him that a traffic stop of the Altima had been effectuated based upon an expired license plate tag. Upon running a search of the social security number, the driver was identified as Diangela Santana. Hood then informed the narcotics detective that Giles and Santana were the individuals in the Altima. The narcotics detective asked if there was reasonable suspicion of criminal activity or any basis for sending a canine unit. Officer Hood responded "possibly" and stated that he had spotted a plastic baggie in the console area. Hood also told the narcotics detective that he intended to ask for consent to search the vehicle. Before Hood exited his cruiser to investigate the plastic baggie, another officer who had arrived on the scene approached Hood's cruiser. Hood informed the officer of the situation, and the officer approached the Altima. Hood also asked dispatch to run a check for warrants on both occupants of the Altima.

Officer Hood then exited the cruiser and approached the Altima on the passenger's side. Hood again asked for the vehicle registration, but Giles was unable to locate it. Hood further questioned Giles and Santana about where they had been and where they were going. The response was that they had come from Frankfort to visit a nephew or cousin that lived on Locust Avenue and were now returning to Frankfort. Hood asked Giles and Santana if anything was in the vehicle to "worry about," and the response was "no." Hood then asked for consent to search the vehicle. Santana denied the request to search and stated the vehicle was not his. Hood and the other officer on the scene then stepped away and discussed whether there was anything illegal in plain view inside the Altima. Hood said, "What do you think? Did you see anything?" The other officer responded in the negative. Both officers concluded the baggie in the console was one for plastic silverware. The other officer can then be heard saying, "You got nothing, man. I don't see anything." Hood responded, "I don't either."

Officer Hood returned to his cruiser and was informed by dispatch that neither Giles nor Santana had any outstanding warrants for their arrest and that Santana had an active driver's license. Hood then reported to the narcotics detective that the plastic baggie was for silverware and that consent to search the vehicle was denied. The narcotics officer could then be heard on the radio responding, "Ten-four. Should we start a canine?" Hood responded, "Ten-four.

Start canine my way." A few minutes later dispatch informed Hood there was not a canine available to send. There was some chatter on the radio, and then the narcotics detective asked Hood if he had "plain smell or anything else." Hood said he did not have "plain smell" nor did he visualize any "shake."[1]

For the next several minutes, Hood could be seen and heard continuing to work on his computer. Shortly thereafter, the narcotics detective said he had a canine unit in route. The narcotics detective also advised Hood to start writing the citation for the expired license plate tag; Hood responded he had already started.

An officer on the scene walked up to Hood's passenger window, and they engaged in small talk while Hood worked on his computer. Approximately thirty minutes after the initial traffic stop, Hood printed the citation out at about the same time that the canine unit arrived. Hood did not deliver the citation to Santana before the other officers asked Santana and Giles to exit the vehicle.[2] A sniff by the canine led to discovery of cocaine, a baggie with residue, and scales.

Our review of a circuit court's denial of a motion to suppress evidence is pursuant to a two-prong test. *Commonwealth v. Mitchell*, 610 S.W.3d 263, 268

---

[1] Shake is apparently a term used to refer to small pieces of marijuana.

[2] As the body camera video only recorded a thirty minute segment, the video recording cuts off at this point.

-6-

(Ky. 2020). Under the first prong, we review the circuit court's findings of fact pursuant to the clearly erroneous standard. *Id.* Pursuant to this standard, the circuit court's "findings of fact will be conclusive if they are supported by substantial evidence." *Id.* Under the second prong, we review the circuit court's application of law to the facts *de novo. Id.* In the case *sub judice*, neither party has challenged the circuit court's findings of fact, so we will proceed to review the court's application of law to the facts.

Giles asserts the circuit court improperly denied his motion to suppress evidence. More particularly, Giles contends that although the circuit court properly determined the traffic stop was prolonged beyond the time necessary to complete the traffic citation, the circuit court improperly determined that Hood had reasonable suspicion of criminal activity to justify prolonging the traffic stop for a canine unit to arrive.

It is uncontroverted that the initial stop of the Altima was a lawful traffic stop based upon the vehicle's expired license plate tag. However, even a lawful traffic stop may "become unlawful if it is prolonged beyond the time reasonably required to issue a traffic citation." *Commonwealth v. Smith*, 542 S.W.3d 276, 281 (Ky. 2018) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). In other words, detaining the driver, and by logical extension a passenger, becomes unreasonable when the "tasks tied to the traffic infraction are – or reasonably

should have been – completed . . . ." *Id.* at 281 (citation omitted).  In this case, we agree with the circuit court that the traffic stop was prolonged beyond the time reasonably necessary to issue a citation for the expired license plate tag.  Thus, the pivotal question becomes whether there was reasonable and articulable suspicion of criminal activity to justify prolonging the stop for a canine unit to arrive.

As an appellate court, we must determine whether the officer had a reasonable and articulable suspicion that criminal activity was afoot to justify prolonging the traffic stop.  *Commonwealth v. Blake*, 540 S.W.3d 369, 373 (Ky. 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  Reasonable suspicion is determined by examining the totality of the circumstances.  *Id.* (citation omitted).  And, when determining whether reasonable suspicion of criminal activity exists, "the collective knowledge of all the law enforcement officers involved in the stop may be taken into consideration."  *Id.* at 373 (citation omitted).  More particularly, a police officer may properly rely upon a radio bulletin or other information shared by another law enforcement officer or department to justify a *Terry*[3] stop; however, the bulletin or other information must be based upon reasonable suspicion of criminal activity.  *U.S. v. Hensley*, 469 U.S. 221, 232 (1985) (holding that "if a [wanted] flyer or bulletin has been issued on the basis of articulable facts

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop").

At the evidentiary hearing, Hood acknowledged there was no contraband in plain view and there was no plain smell. Therefore, the basis for the *Terry* stop had to derive from the narcotics detective's radio call that a white Nissan Altima left a house on Locust Avenue known for drug activity after making only a five-minute stop. *Terry,* 392 U.S. 1 (1968). However, there was no testimony or other evidence presented at the hearing regarding the basis for the narcotic's detective's belief that the house on Locust Avenue was a known drug house. The narcotics officer did not testify at the hearing.

To have properly relied upon the narcotics detective's radio call, it was incumbent upon the Commonwealth to have introduced evidence setting forth the facts supporting the reasonable suspicion that the house on Locust Avenue was indeed a known drug house. In the absence thereof, we can only conclude that there was not reasonable suspicion of criminal activity to support the narcotics detective's radio call concerning the Altima leaving the known drug house on Locust Avenue.[4] In this respect, the circuit court committed an error of law.

---

[4] We note that in *U.S. v. Hensley*, 469 U.S. 221, 232-34 (1985), a police officer testified concerning the articulable suspension of criminal activity that lead to issuance of the "wanted flyer." In the case *sub judice*, the narcotics detective did not testify at the evidentiary hearing on the motion to suppress.

Additionally, the evidence established that Hood did not see the Altima leave the house, the narcotics detective did not provide a license plate number, and the narcotics detective did not supply a description of the individuals in the Altima. A driver's license check revealed that Santana had an active driver's license, and a search for outstanding warrants revealed that neither Santana nor Giles had any outstanding warrants. And, there was no evidence that Giles or Santana had a criminal history. While certainly a close call, in the absence of any other evidence being presented at the suppression hearing, we must conclude that Hood's actions in prolonging the stop for an expired license plate tag to wait for a canine unit were unreasonable and were in violation of Giles' Fourth Amendment right to be free from an unreasonable search and seizure. There was insufficient evidence presented at the hearing to justify prolonging the stop.

In sum, we are of the opinion that the circuit court erroneously denied Giles' motion to suppress evidence seized from the automobile.

For the foregoing reasons, the January 15, 2020, Amended Final Judgment and Sentence of Imprisonment of the Fayette Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Emily Holt Rhorer
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky