RENDERED: MARCH 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1382-MR

BARBARA NOONER                                              APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.        HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 16-CI-00210

KENTUCKY RETIREMENT SYSTEMS;
AND BOARD OF TRUSTEES OF THE
KENTUCKY RETIREMENT
SYSTEMS                                                     APPELLEES

AND

NO. 2019-CA-1488-MR

KENTUCKY RETIREMENT SYSTEMS              CROSS-APPELLANT

CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.        HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 16-CI-00210

BARBARA NOONER                                         CROSS-APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  In appeal No. 2019-CA-1382-MR, Barbara Nooner contests an order of the Franklin Circuit Court affirming the denial by Kentucky Retirement Systems (Systems) of her claim for disability retirement benefits.  In cross-appeal No. 2019-CA-1488-MR, Systems asserts that Nooner's appeal is untimely and must be dismissed due to what it views as her untimely service of a post-judgment Kentucky Rules of Civil Procedure (CR) 59.05 motion.  Upon review, we affirm regarding each of these matters.

**CROSS APPEAL NO. 2019-CA-1488-MR**

We review Systems's cross-appeal first because it involves the question of whether we have the jurisdiction to resolve Nooner's appeal.  The circuit court entered its order affirming the administrative denial of Nooner's application for disability retirement benefits, and thus dismissed Nooner's action before it, on March 26, 2019.  Afterward, Nooner moved the circuit court to alter, amend, or vacate its decision pursuant to CR 59.05.  The controversy in this appeal involves the operative effect of Nooner's motion.

Generally, only final judgments are appealable.  *See* CR 54.01. However, a timely CR 59.05 motion converts a final judgment into an

-2-

interlocutory judgment until the motion is adjudicated. *Johnson v. Smith*, 885 S.W.2d 944, 947 (Ky. 1994).

As was proper, Nooner waited until after the circuit court resolved her CR 59.05 motion to file her notice of appeal in this matter. The circuit court denied Nooner's CR 59.05 motion on August 14, 2019, and Nooner subsequently timely filed her notice of appeal on September 12, 2019, within the thirty-day deadline in accordance with CR 73.02(1)(a).

However, Systems contested the timeliness of Nooner's CR 59.05 motion. In its April 15, 2019 motion to that effect, Systems noted that CR 59.05 motions "shall be served not later than 10 days after entry of the final judgment" and, it argued, substantial evidence indicated Nooner's motion had exceeded that deadline. Systems pointed out that the ten-day deadline would have expired on Friday, April 5, 2019, but Nooner's CR 59.05 motion indicated it had been electronically filed on Monday, April 8, 2019. Additionally, Systems included as an exhibit to its motion a copy of the envelope in which Nooner's CR 59.05 motion had arrived at its address, which indicated it was postmarked on Sunday, April 7, 2019.

Systems argued that consequently, the circuit court lacked jurisdiction to resolve Nooner's CR 59.05 motion and, because Nooner's motion was ineffective, it could not convert a final order into an interlocutory one. Therefore,

Systems argued Nooner had thirty days from the date the circuit court entered its March 26, 2019 order to file a notice of appeal if she wished to do so.

Responding, Nooner observed that at least part of Systems's argument about the timeliness of her CR 59.05 motion misread the rule: CR 59.05 requires a motion to alter, amend, or vacate to be *served* within ten days of the final judgment, not *filed*. Thus, Systems's contention about the April 8, 2019 *filing* date of her motion was irrelevant. Regarding Systems's argument about *service*, Nooner also pointed out that some evidence indicated her service was timely. In particular, she noted the certificate of service on her CR 59.05 motion, as signed by her attorney, recited that a true and correct copy had been mailed to Systems on April 5, 2019, that CR 5.02 provides that service may be made by mail and is "complete upon mailing," and that CR 5.03 further provides that *proof* of service "may be by certificate of a member of the bar of the court."

The circuit court ultimately resolved this dispute in Nooner's favor through an order entered April 29, 2019. Its order focused on the question of whether the motion was *timely filed*, concluding it was timely filed because the clerk indicated it was e-filed on April 5, 2019, returned/rejected on April 8, 2019, but this attempted filing of the identical document to the e-filing on April 8, 2019, was sufficient to make the filing timely. The circuit court opined Nooner made a

clerical error in the e-filing but that it did not prejudice Systems to the extent to warrant dismissal.

In its cross-appeal, Systems reasserts its argument that Nooner's motion was ineffectively served, and that it accordingly could not have converted the circuit court's March 26, 2019 final order into an interlocutory one, thereby making Nooner's September 12, 2019 notice of appeal untimely. However, we disagree that Nooner's appeal must be dismissed as untimely because Systems failed to raise the pertinent issue before the circuit court which underlies its claim of error now, that the circuit court neglected to make any factual findings as to whether Nooner properly *served* her CR 59.05 motion within the time allowed by the rule.

As indicated, CR 5.03 provides that proof of service "may be by certificate of a member of the bar of the court." *See Huddleson v. Murley*, 757 S.W.2d 216 (Ky.App. 1988) (applying this rule). Such proof, however, is not conclusive. Where, as here, it is attacked with evidence tending to show that service was not timely, the trial court may disregard the certification. Although generally findings of fact are not required for the disposition of CR 59.05 motions (*see* CR 52.01), where findings are clearly implied, they may be disturbed on appeal only if clearly erroneous. CR 52.01. *Cf. Clark Equipment Company, Inc. v.*

*Bowman*, 762 S.W.2d 417 (Ky.App. 1988) (adopting clearly erroneous standard of review for findings underlying CR 11 ruling).

Here, due to the conflicting proof as to whether the motion was *served* timely, the necessity of a finding regarding the timeliness of Nooner's service of her CR 59.05 motion was clearly implied by the parties' dispute. As explained in CR 52.04:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment *unless such failure is brought to the attention of the trial court by a written request for a finding on that issue* or by a motion pursuant to Rule 52.02.

(Emphasis added.) *See Eiland v. Ferrell*, 937 S.W.2d 713, 716 (Ky. 1997) (interpreting CR 52.04). "The appellate court reviews for errors, and a nonruling cannot be erroneous when the issue has not been presented to the trial court for decision." *Commonwealth v. Smith*, 542 S.W.3d 276, 285 (Ky. 2018) (citation omitted).

As indicated, the circuit court failed to make any such finding about the timeliness of service. After the circuit court found in Nooner's favor, Systems therefore became obligated to bring this failure "to the attention of the trial court" and its failure to do so has deprived this Court of authority to assess the timeliness of Nooner's service of her CR 59.05 motion. Consequently, we have nothing to

review, cannot reverse the circuit court's decision on this point, and must accordingly affirm.

## APPEAL NO. 2019-CA-1382-MR

Nooner is a member of the Systems and was employed as an Administrative Specialist II with the Cabinet for Health and Family Services (Cabinet). Her employment date (and membership date with the Systems) was September 1, 2000 and her last day of paid employment was July 31, 2012. Accordingly, Nooner has less than sixteen years of total service credit. The primary job duties of an Administrative Specialist II consisted of receiving claims and assigning them to adjudicators, opening boxes of claims and stacking them on shelves, and assisting in the mailroom. As accommodated, however, Nooner's job duties consisted solely of computer work, and the Cabinet allowed her to work part time, three days per week, beginning March 1, 2011. Thus, her position with the Cabinet was considered "sedentary" within the meaning of Kentucky Revised Statute (KRS) 61.600(5)(c)1.

On October 26, 2012, at 54 years of age, Nooner applied for nonhazardous disability retirement benefits pursuant to KRS 61.600, alleging permanent incapacity from "end stage COPD/emphysema."[1] On her application,

---

[1] At the administrative level, Nooner initially contended she was also permanently incapacitated due to: (1) major depressive disorder; (2) anxiety disorder; and (3) fibromyalgia. Nooner subsequently abandoned these contentions, and we need not address them.

Nooner alleged the onset of this condition had occurred in the fall of 2009, and she explained why she believed it had rendered her permanently disabled: "I can't function because lack of oxygen has affected my brain. I get dizzy and am prone to falling often. I can't walk very far without going into distress."

Upon review, the Kentucky Retirement Systems Medical Review Board recommended denying Nooner's application. Each of its three members noted that because Nooner had less than sixteen years of service credit, she could not claim permanent incapacity due to any condition that preexisted her membership date (*i.e.*, September 1, 2000). *See* KRS 61.600(3)(d). Each of the members also concluded that the approximately 275 pages of medical records Nooner submitted with her application failed to demonstrate that her emphysema/COPD did not stem from a preexisting condition.

Nooner chose not to submit additional medical records to the Medical Review Board for purposes of reconsideration. *See* KRS 61.665(2)(f). Instead, she appealed the Medical Review Board's determination by filing a request for a formal hearing. Thereafter, a hearing was held, and the hearing officer entered a recommended order denying Nooner's request for disability retirement benefits after determining Nooner had failed to demonstrate her condition of COPD/emphysema: (1) was not preexisting; and (2) qualified as permanently incapacitating within the meaning of KRS 61.600(5)(a)1. Subsequently, the

-8-

Disability Appeals Committee of the Board of Trustees of the Kentucky Employee Retirement Systems (the Board) adopted the hearing officer's recommended order with minor modification. Nooner then filed an original action in Franklin Circuit Court contesting the Board's decision. After Nooner and the Systems submitted briefs in support of their respective positions, the circuit court affirmed the Board's determination and consequently dismissed Nooner's action. This appeal followed.

Upon review of an administrative agency's adjudicatory decision, an appellate court's authority is limited. The judicial standard of review is generally whether the agency's findings of fact were supported by substantial evidence and whether the agency correctly applied the law to the facts. *See Thompson v. Ky. Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky.App. 2002). Additionally, we note that when the Board enters an order *denying* retirement benefits, it must nevertheless "base" its order on substantial evidence. *See* KRS 61.665(3)(d); KRS 13B.150(2)(c). In administrative proceedings, the claimant bears the burden of proving entitlement to a benefit by a preponderance of the evidence, and likewise carries the risk of non-persuasion. KRS 13B.090(7). *See Kentucky Ret. Sys. v. West*, 413 S.W.3d 578, 581 (Ky. 2013) (explaining "[t]he Systems may or may not present evidence to rebut the claimant's proof. Regardless, the burden [of proof] does not shift to the Systems.").

The Board's denial of benefits will be "based on substantial evidence" within the meaning of KRS 61.665(3)(d) if it rests upon an assessment – supported by the record – of a claimant's credibility, or the quality of the claimant's evidence, or the quality of countervailing evidence. *See, e.g.*, *Ky. Retirement Sys. v. Ashcraft*, 559 S.W.3d 812, 822 (Ky. 2018) (applying this approach). Conversely, if a claimant presents a *prima facie* case for benefits, and the Board denies the claim but provides *no* basis supported by the record for doing so, the Board's decision will be reversed. *Id*. at 819 (explaining "[i]f there had been an absence of substantial evidence supporting the Board's opinion [denying a claim for benefits], that alone would have required reversal under the statutory standard.").

Lastly, where the record can fairly be read as containing substantial evidence in favor of both sides,

> Kentucky law is clear that the fact-finding agency is charged with making the "call" in those difficult cases and outlining the grounds for the result reached. Simply put, the agency is the decider on issues of fact. Thus, under the *McManus* [*v. Ky. Retirement Sys.*, 124 S.W.3d 454, 458 (Ky.App. 2003),] standard, a court cannot substitute its judgment on those contested issues of fact but if the appealing party has not met his burden of proof with the fact-finder, the court can properly, indeed must, consider whether that party's proof was so compelling that no reasonable person could have failed to be persuaded. If this high standard is met, so is KRS 13B.150(2)(d) which allows for reversal when a final

-10-

order is "[a]rbitrary, capricious, or characterized by an abuse of discretion."

*Ashcraft*, 559 S.W.3d at 819-20.

With that said, we now turn to the overarching question presented in this appeal: whether the Board properly denied Nooner's application for benefits. Again, the reasons for the Board's decision were two-fold: it determined Nooner insufficiently demonstrated her emphysema/COPD was: (1) not preexisting; or (2) permanently incapacitating. Either finding alone was sufficient to deny Nooner's application for benefits.

We first discuss whether Nooner established that her emphysema/COPD was permanently incapacitating. As part of her claim, Nooner was required to demonstrate that emphysema/COPD incapacitated her from performing the job, or jobs of like duties, from which she received her last paid employment. KRS 61.600(3)(a). Likewise, Nooner's incapacitation was required to be "permanent," meaning "it is expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months from the person's last day of paid employment in a regular full-time position." KRS 61.600(5)(a)1. A determination of permanency must be based on the medical evidence and the claimant's "capacity for work activity on a regular and continuing basis." KRS 61.600(5)(a)2. and (5)(b). With that in mind, whether Nooner has effectively addressed these points on appeal is questionable. In her brief, the extent to which

she presents an argument or describes any of her evidence in this vein is as

follows:

> **Nooner's Proof at Her Formal Hearing as to Being Disabled**.
>
> In order to prove that she was disabled, Ms. Nooner introduced the uncontradicted objective medical evidence of Dr. James Meuller [sic], which showed that Ms. Nooner was disabled by COPD as of her last day of paid employment. (See Claimant's 08/20/15 Submission of Medical Records).
>
> **Nooner's Proof at Her Formal Hearing as to Her Disability Being Permanent**.
>
> Dr. Meuller's [sic] uncontradicted objective medical evidence also showed that Ms. Nooner would continue to be totally permanently disabled by COPD. (See again Claimant's 08/20/15 Submission of Medical Records).

To be clear, Nooner submitted roughly fifty pages of medical

documents generated by her treating pulmonologist, Dr. *Joseph Mueller*, with her

"08/20/15 Submission of Medical Records." This Court does not function as an

advocate for any party; we will not dissect the evidence on behalf of a party who

has chosen not to do so, nor go on a fishing expedition to find support for

underdeveloped arguments. *See Milby v. Mears*, 580 S.W.2d 724, 727 (Ky.App.

1979) (noting that "a reviewing court will . . . confine itself to errors pointed out in

the briefs and will not search the record for errors.").

-12-

Perhaps belatedly recognizing this point, Nooner then includes six pages of new arguments in part "A" of the appendix in her reply brief regarding what she asserts is the permanently incapacitating nature of her emphysema/COPD. But this, in turn, is an attempt to make two more wrongs into a right: reply briefs and appendices are not vehicles for raising new arguments. As explained in *Milby*, "[t]he reply brief is not a device for raising new issues which are essential to the success of the appeal." *Id.* at 728. *See* CR 76.12(4)(c)(vii) (clarifying with respect to appendices that "materials and documents not included in the record shall not be introduced or used as exhibits in support of briefs.").

However, in the interest of completely addressing Nooner's arguments, we consider the arguments she raises in her reply relative to the medical evidence.[2] Nooner points to medical evidence that Dr. Mueller reported after examining her on May 23, 2012:

> PFT shows very severe obstruction. No prior pulmonary function tests. No significant response to bronchodilator, though there is a 20% response. This does not meet technical requirements for significant improvement.

---

[2] In the six pages of new arguments she has included with her appendix, Nooner also points to vocational evidence and employment records she adduced in relation to a social security award she received due to emphysema/COPD. We will not address that evidence because: (1) she made no reference to it at all in her primary brief; and (2) it is not "objective medical evidence" within the meaning of KRS 61.510(33). *See* 105 Kentucky Administrative Regulation (KAR) 1:210 § 8(1) ("The hearing officer shall consider only objective medical records contained within the determination and shall not consider vocational factors or be bound by factual or legal findings of other state or federal agencies.").

-13-

> Chest Xray done today showed severe emphysematous changes A: 1. very severe chronic obstructive pulmonary disease, possible asthmatic component. 2. ongoing tobacco abuse. 3. exercise induced hypoxia. 4. abnormal pulmonary function tests. 5. allergic rhinitis. 6. unexplained weight loss, possible pulmonary cachexia. (20). A follow up chest CT showed "Chronic pulmonary changes."

Nooner also relies on her general physician, Dr. Strunk, noting that her emphysema and dyspnea had gradually worsened and the breath sounds in both lungs had decreased, that Dr. Mueller found Nooner had an abnormal overinflated chest, abnormal auscultation of lungs with "<u>decereased</u> [sic] <u>breath sounds diffusely</u> . . . <u>Diminished breath sounds over both apices,</u>" and swelling and pitting of both her ankles and lower legs. Nooner also notes that her pulmonary function test showed "severe obstruction, with no significant responses to bronchoilator [sic]" and that Dr. Mueller referred her for a lung transplant.

Nooner emphasized that in January 15, 2015, Dr. Mueller diagnosed her as follows: "Chronic respiratory failure, Emphysema/COPD -A. Stage IV COPD with chronic respiratory failure. B. Hypoxemia, on home oxygen 3L with activity and 2 L at night." She also noted that Dr. Mueller in his responses to the Social Security Questionnaire "made it absolutely clear that Nooner has been and

-14-

will continued [sic] to be totally permanently disabled by COPD from at least [May³] 2012."

With that in mind, we now turn to whether the Board's denial of Nooner's claim was based on substantial evidence. Rejecting Nooner's claim that her emphysema/COPD was permanently incapacitating as of July 31, 2012 (her last day of paid employment), the hearing officer's order, as adopted by the Board, primarily focused upon three points. First, the Board considered whether Nooner had taken reasonable steps to recover from her condition or alleviate her problems at her work.⁴ Here, because Nooner had admittedly refused to follow her treating physician's instructions to address the symptoms of her emphysema/COPD, the Board found her claim of permanent incapacity dubious.

As noted earlier, Nooner alleged in her application for benefits that her condition made it difficult to breathe, and that she was consequently unable to

---

³ In her reply brief, Nooner represents Mueller indicated in his responses to the Social Security Questionnaire that she was "totally permanently disabled by COPD from at least March 2012." We assume "March" was a typo on her part, because Mueller wrote "May" on that document.

⁴ Nooner argues that her failure to follow the recommendations of her treating physicians should not detract from her claim that her emphysema/COPD was expected to be permanently incapacitating. In support, she notes that KRS 61.600 does not specify that it should. But, nowhere does KRS 61.600 specify that it *shouldn't*. And, where the General Assembly does not use language that addresses the specific question at issue, the standard of review for an agency's interpretation of unclear, ambiguous language in a statute is whether the agency used "a permissible construction of the statute" to reach its adjudicative decision. *Metzinger v. Ky. Ret. Sys.*, 299 S.W.3d 541, 545 (Ky. 2009) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). Here, we find nothing impermissible about the Board's decision in that vein.

work "because lack of oxygen has affected my brain, I get dizzy." During the administrative hearing, she added that her breathing problems would cause her to become fatigued, explaining that she began having these difficulties in 2011.

However, Nooner testified at the administrative hearing that Dr. Mueller had directed her to use supplemental oxygen and had provided her with a supplemental oxygen tank since March 2011. She testified that Dr. Mueller had directed her to use the supplemental oxygen "24/7," and that he and virtually all her other treating physicians since at least 1999 had also instructed her to quit her decades-long habit of smoking approximately one package of cigarettes per day. Despite that, Nooner conceded that as of July 31, 2012, she had *never* used her prescribed supplemental oxygen at work and had not quit smoking. Indeed, an August 15, 2012 treatment note from Dr. Mueller states: "Still smoking despite my encouragement and recommendation to quit. Claims she wears O2 regularly, but didn't wear it to this appt."

Second, the Board noted that while the medical documentation indicated Nooner's emphysema/COPD had gradually worsened between the date of her diagnosis (late 2009) and her last date of paid employment, it also indicated her condition had not been affected by any acute processes before or shortly after

her last day of paid employment;[5] it was able to be managed through oxygen, prescription medications, and inhalers; and that it had been subject to few exacerbations and considered "stable," particularly after she began receiving pulmonary rehabilitation treatment in February 2013.[6]

Third, the Board noted that no physician had ordered Nooner to stop working due to emphysema or COPD or had placed her on any work restrictions or limitations due to those conditions. We also note that when Nooner properly raised an argument below about Dr. Mueller's "responses to the Social Security Questionnaire found at Nooner's 08/20/15 Submission of Medical Records," and thus provided the Systems an opportunity to respond to this evidence, the Systems pointed out:

> Since Dr. Mueller began treating [Nooner] prior to her last day of paid employment, he could have removed her from work if he thought it was necessary to do so.[7] (Claimant's Position Statement, p. 17 and Ex. 1). Moreover, the Questionnaire isn't credible. It indicates Claimant can only sit for 15 minutes at one time before

---

[5] In particular, the Board emphasized that a chest x-ray dated August 8, 2012 revealed "no acute pulmonary disease."

[6] As the Board noted in its order, after Nooner began receiving pulmonary rehabilitation treatment in February 2013, Dr. Mueller noted Nooner's emphysema/COPD was stable with no exacerbations when she later presented to him on May 31, 2013, September 5, 2013, February 11, 2014, and May 20, 2014. In these latter two notes, Dr. Mueller respectively stated Nooner "has been participating in pulmonary rehabilitation, reports that her exercise tolerance has improved. She feels better overall" and that she "has completed pulmonary rehabilitation and overall feels much better."

[7] Because it is undated, it is also unclear when Dr. Mueller completed his "responses to the Social Security Questionnaire found at Nooner's 08/20/15 Submission of Medical Records[.]"

needing to get up, yet Claimant sat throughout her administrative hearing that lasted one hour and 5 minutes without taking a break or getting up.

The Board's order denying Nooner benefits rests upon an assessment – supported by the record – of her credibility, the quality of her evidence, and the quality of countervailing evidence. Thus, it was *based* on substantial evidence of record. KRS 61.665(3)(d). The Board simply had a different interpretation of the medical evidence that Nooner submitted than she had. Moreover, we cannot say that what Nooner presented to the contrary is "so compelling that no reasonable person could have failed to be persuaded." *Ashcraft*, 559 S.W.3d at 820. Accordingly, we have no basis to reverse on this issue.

Although this is sufficient to affirm, we briefly consider whether Nooner demonstrated that her emphysema/COPD was not preexisting. While Nooner was not diagnosed with emphysema/COPD prior to her employment, the medical records revealed she had an extensive history of respiratory infections and breathing difficulties prior to and following her September 1, 2000 membership date. Each of the three examining members of the Medical Review Board attributed this history as indicating early symptomatology of COPD even though Nooner's diagnosis came much later. They also opined that the advanced state of her disease indicated its genesis was likely prior to her membership and pointed to

the lack of evidence that her lungs were free and clear of disease prior to her membership date.

Upon consideration, the Board agreed with the assessment of its Medical Review Board members that because the nature of Nooner's symptoms of congestion, respiratory infection, and difficulty breathing were indicative of emphysema/COPD, and because Nooner had repeated instances of those symptoms in 1999, Nooner had failed to demonstrate that her emphysema/COPD was not "objectively discoverable by a reasonable person" prior to her September 2000 employment and membership date. *Kentucky Retirement Systems v. Brown*, 336 S.W.3d 8, 14-15 (Ky. 2011).

The circuit court agreed with the Board, noting that Nooner's records showed that she had congestion issues for two years prior to the July 19, 1999 appointment and that she has been treated about twice a year for bronchitis, thus indicating that she was symptomatic of COPD and emphysema prior to her membership date and, thus, her COPD is a direct or indirect result of a preexisting condition. The circuit court specifically stated that the opinions of the Medical Review Board interpreting Nooner's medical records as showing that she was symptomatic prior to her membership date could properly be used as substantial evidence to support the Board's finding.

Nooner argues this interpretation of her medical records is incorrect and once again notes that she was not diagnosed with emphysema/COPD until October 2009. Nooner relies on a letter from Dr. Allen Haddix, a physician who reviewed the same records Nooner produced with her application for benefits to the Medical Review Board, who concluded that at the time of her membership, Nooner "did not have a medical condition which resulted in or progressed to the COPD which I understand disables her today." Dr. Haddix opined that Nooner's prior history of acute respiratory illness was not part of her COPD.

We disagree with Nooner that Dr. Haddix's opinion compels that we reverse. Dr. Haddix's opinion simply demonstrates that Nooner's medical records are subject to more than one interpretation, rather than that Dr. Haddix's opinion is the only possible one. The Board had substantial evidence to support its conclusion that Nooner's condition, although not diagnosed until much later, was symptomatic and preexisted her membership in Systems. Therefore, reversal is not warranted on this basis.

Accordingly, in appeal No. 2019-CA-1488-MR, we affirm the Franklin Circuit Court's ruling that Nooner's CR 59.05 motion was timely served. In appeal No. 2019-CA-1382-MR, we affirm the Franklin Circuit Court's decision affirming the denial of Nooner's claim for disability retirement benefits because

Nooner insufficiently demonstrated her emphysema/COPD was not preexisting or permanently incapacitating.

ALL CONCUR.

| BRIEFS FOR APPELLANT/CROSS-APPELLEE: | BRIEFS FOR APPELLEE/CROSS-APPELLANT KENTUCKY RETIREMENT SYSTEMS: |
|---|---|
| Roy Gray | |
| John Gray | Carrie B. Slayton |
| Frankfort, Kentucky | Frankfort, Kentucky |