RENDERED:  AUGUST 13, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0966-MR

KENNETH LAMONT BOONE, JR.                          APPELLANT


APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE ERNESTO M. SCORSONE, JUDGE
ACTION NO. 16-CR-00383


COMMONWEALTH OF KENTUCKY                          APPELLEE


OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  A jury found Kenneth Lamont Boone, Jr. guilty of

theft of identity and being a persistent felony offender in the first degree (PFO I).

The jury recommended a one-year sentence, enhanced to ten years due to the PFO

I conviction.  After the Fayette Circuit Court sentenced Boone in accordance with

the jury's recommendation, he filed this appeal challenging the trial court's

decisions to deny his two suppression motions and to decline to give a requested

lesser-included offense instruction.  Boone also claims error regarding parole

eligibility information given to the jury in the penalty phase. We affirm in part, reverse in part, and remand.

In April 2016, Boone was indicted for the felony offenses of possession of a controlled substance in the first degree, theft of identity, and being a PFO I, as well as the misdemeanor offense of operating on a suspended or revoked license and not having an illuminated rear license plate, a violation. All of those charges stemmed from a February 2016 traffic stop.

In early 2017, Boone filed his first motion to suppress, tersely asserting the traffic stop was improperly extended. The trial court held an evidentiary hearing at which the arresting officer, Detective Christopher Pope from the narcotics enforcement unit of the Lexington Police Department, was the sole witness. Detective Pope testified that he was conducting surveillance in an unmarked vehicle at a Walmart when he observed a black Tahoe and a white Trailblazer pull into the lot, whereupon people switched between the two vehicles without having visited any stores. His suspicions aroused, Detective Pope followed the white Trailblazer and pulled it over because its rear license plate was unilluminated.

Boone was driving the Trailblazer. Detective Pope knew the passenger, who had a criminal history, from previous investigations. Boone said he did not have identification, stated his license was suspended, stated his name

-2-

was Daniel Wharton, and provided Wharton's birthdate. According to Detective Pope, Boone was breathing heavily, would not make eye contact, and appeared to be nervous (as did the passenger). Boone also told Detective Pope that the Trailblazer belonged to his (Wharton's) sister, but he did not know her last name. Detective Pope requested a canine unit roughly four minutes after initiating the stop.

While awaiting the canine unit, Detective Pope looked up the criminal history of Wharton and the passenger. Detective Pope then began handwriting a traffic citation but had to stop doing so at least twice to respond to questions from Boone about whether he was going to jail. Detective Pope was still working on the citation when the canine unit arrived, about nineteen minutes after being requested (about twenty-three minutes after the stop began).

Detective Pope assisted the canine unit officer in removing Boone and the passenger from the vehicle prior to the dog sniff. The dog alerted to the presence of drugs at the driver's side door. No drugs were found in the vehicle, so Detective Pope searched Boone and found cocaine in his pants pocket. Jail personnel ascertained that "Daniel Wharton" was really Kenneth Lamont Boone, Jr., which led to Boone being charged with theft of identity.

Following the conclusion of the hearing, the trial court permitted the parties to submit pleadings. The Commonwealth argued that the stop was not

improperly extended or, alternatively, that there was reasonable suspicion to justify the dog sniff.

In February 2017, the trial court issued an order denying Boone's first motion to suppress. In relevant part, the court concluded the initial stop was justified since Boone's vehicle's rear license plate was not illuminated. The court then found the stop was not improperly extended by the canine sniff because there was no indication Detective Pope was dilatory in completing the citation, so the stop was not extended longer than necessary to complete its original purpose. The trial court did not address the Commonwealth's reasonable suspicion argument because it deemed the stop to have not been improperly extended.

A few months later, Boone filed a second motion to suppress, arguing the search of his person was improper. The trial court dutifully held a hearing on the second suppression motion at which Detective Pope reiterated much of his testimony from the first hearing and Timothy Moore, the canine officer whose dog alerted to the Trailblazer, testified about the dog sniff. Officer Moore testified that narcotics dogs are trained to alert for the odor of narcotics, which can linger after the narcotics themselves are no longer present, akin to how the smell of burned popcorn can be detected by humans after the popcorn has been removed. The trial court orally denied the motion, ruling that the dog's alert gave the police authority

to search the driver under our decision in *Morton v. Commonwealth*, 232 S.W.3d 566 (Ky.App. 2007).

The drug possession charge was severed, and the remaining charges proceeded to a November 2018 jury trial. Boone unsuccessfully requested a jury instruction on the misdemeanor offense of giving a peace officer false identifying information as a lesser-included offense of theft of identity. The jury found Boone guilty of all charges submitted to it and recommended a PFO I-enhanced sentence of ten years' imprisonment, which was the statutory minimum. Boone later entered a conditional guilty plea to the possession of a controlled substance charge, reserving the right to appeal the denial of his motions to suppress. In May 2019, the trial court sentenced Boone to a total of ten years' imprisonment, after which he filed this appeal.

We begin with Boone's contention that the trial court erred by denying his motions to suppress. The scope of our review is familiar:

> First, we review the trial court's findings of fact under the clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. Second, we review de novo the trial court's application of the law to the facts.

*Rhoton v. Commonwealth*, 610 S.W.3d 273, 275-76 (Ky. 2020) (footnotes and citations omitted).

The core of Boone's argument is that Detective Pope improperly increased the duration of the traffic stop because he diverted working on the citation to do other things including looking up the criminal history of Boone and his passenger, calling the canine unit, explaining the situation to Officer Moore upon his arrival, and assisting in removing Boone and his passenger from the vehicle prior to the dog sniff. The Commonwealth maintains that Detective Pope diligently worked on the citation and did not impermissibly extend the stop or, alternately, that he had reasonable articulable suspicion that criminal activity was afoot sufficient to justify the canine sniff.

Boone does not dispute that the vehicle's rear license plate was not illuminated, contrary to the requirements of Kentucky Revised Statute (KRS) 186.170(1). A failure to comply with KRS 186.170 is a violation under KRS 186.990(1). "[A]n officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so." *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001). Consequently, the initial traffic stop was proper.

Generally, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015). Of course, an officer "may conduct certain

-6-

unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355, 135 S.Ct. at 1615. In other words, "an officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop unless something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity [is] afoot." *Turley v. Commonwealth*, 399 S.W.3d 412, 421 (Ky. 2013) (internal quotation marks and citations omitted).

We agree with Boone that the time which elapsed during his detention for a minor traffic violation appears to be excessive. However, rather than parse whether the delay constituted an unreasonable seizure, we affirm on the alternative ground that Detective Pope had reasonable suspicion to detain Boone and his passenger because Detective Pope suspected criminal activity was afoot based on additional observations he made before the stop and during his initial encounter with Boone and his passenger while investigating the traffic violation.[1]

A determination of whether an officer possessed reasonable suspicion is based upon "the totality of the circumstances[.]" *Commonwealth v. Morgan*,

---

[1] We may affirm the trial court's decision to deny a motion to suppress on alternate grounds supported by the record. *See, e.g.*, *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

248 S.W.3d 538, 540 (Ky. 2008). Although not readily susceptible to a precise, universal definition, "reasonable suspicion is more than an unparticularized suspicion or hunch[,]" *Bauder v. Commonwealth*, 299 S.W.3d 588, 591 (Ky. 2009) (internal quotation marks and citation omitted), but "is a significantly lower standard than the probable-cause standard." *Boyle v. Commonwealth*, 245 S.W.3d 219, 220 (Ky.App. 2007). Reasonable suspicion is a "relatively low" standard. *Yopp v. Commonwealth*, 562 S.W.3d 290, 294 (Ky.App. 2018).

Our Supreme Court has stressed that "a police officer is not prevented from entertaining a reasonable suspicion that criminal activity is afoot even when the suspect's conduct may have been as consistent with innocent activity as with criminal activity." *Morgan*, 248 S.W.3d at 542 (internal quotation marks and citations omitted). Thus, we must "take care not to view the factors upon which police officers rely to create reasonable suspicion in isolation" but instead "must consider all of the officers' observations, and give due weight to the inferences and deductions drawn by trained law enforcement officers." *Greene v. Commonwealth*, 244 S.W.3d 128, 133-34 (Ky.App. 2008). As the Supreme Court has remarked, "[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United*

*States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750-751, 151 L.Ed.2d 740 (2002) (internal quotation marks and citation omitted).

The entire facts known to Detective Pope when he called for the canine unit provided more than just a hunch that drug activity was afoot. First, Detective Pope testified that the Walmart where he first saw the Trailblazer and Tahoe has a history of being used for illegal activity, including drug trafficking. As explained in *Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky. 2008), "[t]he police are permitted to take into account their surroundings - and whether a particular location has a reputation for being a 'known drug' area - when forming a reasonable and articulable suspicion."

Second, Detective Pope testified that the fact that some occupants of the Tahoe and Trailblazer changed vehicles without any occupants having visited Walmart or nearby stores was consistent with drug trafficking. He is entitled to use his training and experience to connect this observation to drug trafficking.

Third, Boone appeared nervous. "Although nervousness alone is insufficient to give rise to reasonable suspicion, it is an important factor in the analysis." *Id.* (internal quotation marks and citation omitted).

Fourth, Detective Pope knew from previous experience that Boone's passenger had a criminal history. "This Court has held previously that an officer's

knowledge about a suspect's prior record can be a relevant factor in the reasonable suspicion analysis." *Morgan*, 248 S.W.3d at 541.

Fifth, Boone was unable to provide a driver's license. This provided evidence of an additional violation and made verifying his identity more difficult.

Sixth, Boone said his sister owned the Trailblazer, but he did not know her last name. It defies basic logic and rational human experience for someone to not know his or her sister's surname but have a close enough relationship with said sister to be trusted with her vehicle.

Seventh, Detective Pope testified that Boone gave shifting final destinations when asked, and Boone was traveling in a direction inconsistent with the original destination he mentioned. Boone "changing his story" in this manner provided an additional reason for suspicion.

None of those factors, standing alone, would have provided reasonable suspicion since many are, in and of themselves, unremarkable. Many people are nervous when encountering police officers, even if they are not engaged in criminal activity, and every driver has inadvertently driven in the wrong direction. However, when considered collectively, viewed through the eyes of an experienced narcotics officer, the factors constitute reasonable suspicion. Therefore, we affirm the denial of Boone's first motion to suppress.

We now turn to the denial of Boone's second motion to suppress, which focuses on the search of his person after no drugs were found in the vehicle. The trial court held, correctly, that our decision in *Morton*, 232 S.W.3d 566, meant that the drug dog's alert to the vehicle gave the officers the ability to search Boone as a matter of course.

Boone contends the facts here are materially distinguishable from *Morton* because he, unlike Morton, was outside the vehicle during the sniff. Also, Boone stresses that someone else had recently been driving the Trailblazer, whereas there was no evidence of any other recent drivers in *Morton*. Obviously, the facts do not perfectly mirror those in *Morton*. But the facts of any published case are rarely precisely replicated in later cases, especially in the search and seizure context. Nonetheless, the core legal principles in *Morton* apply here:

> [W]e conclude that a positive canine alert, signifying the presence of drugs inside a vehicle, provides law enforcement with the authority to search the driver for drugs but does not permit the search of the vehicle's passengers for drugs unless law enforcement can articulate an independent showing of probable cause as to each passenger searched.

*Id.* at 570. In sum, *Morton* sets forth a bright-line rule that officers may search the driver of a vehicle upon a positive canine alert.

We disagree with Boone's contention that bright-line rule is erased if the driver is removed from the vehicle before the canine sniff occurs. As Officer

Moore testified, a trained canine dog alerts to the smell of narcotics, not necessarily the presence of narcotics, and the smell of narcotics lingers sufficiently to be detected by the trained nose of a drug dog after the narcotics are removed. Therefore, it is logical and proper to search the driver who was occupying the vehicle shortly before the sniff as the dog's alert provides probable cause for such a search.

Finally, our conclusion is not impacted by the fact that another person had recently driven the Trailblazer. Officer Moore testified he did not know about the other driver before the canine sniff and, in any event, the dog's alert gave probable cause to search the person who was driving immediately before the dog alerted. Probable cause is not absolute certainty and probable cause existed to search Boone even if someone else had recently driven the vehicle. As we have explained, probable cause exists when "the known facts provide reasonable grounds or a fair probability that a circumstance exists[.]" *Baltimore v. Commonwealth*, 119 S.W.3d 532, 538 (Ky.App. 2003). The existence of the prior driver did not eliminate the "fair probability" that the drugs to which the dog alerted were on Boone's person since he had just driven the vehicle from which the odor of narcotics emanated. In short, we affirm the trial court's denial of Boone's second motion to suppress.

Boone next contends the trial court erred by declining to give a requested jury instruction on giving a peace officer false identifying information as a lesser-included offense of theft of identity. We agree.

An offense is a lesser-included offense under KRS 505.020(2)(a) if "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" In other words, "if the lesser offense requires proof of a fact not required to prove the greater offense, then the lesser offense is not included in the greater offense, but is simply a separate, uncharged offense." *Colwell v. Commonwealth*, 37 S.W.3d 721, 726 (Ky. 2000). We review claims that a court erred by declining to give a requested jury instruction for abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015).

As it pertains to this case, Boone committed the felony offense of theft of identity of another pursuant to KRS 514.160(1) if he:

> knowingly possesse[d] or use[d] any current or former identifying information of the other person or family member or ancestor of the other person, such as that person's . . . name . . . birth date . . . and any other information which could be used to identify the person . . . with the intent to represent that he or she is the other person for the purpose of:
>
> . . .
>
> (d) Avoiding detection[.]

-13-

Alternatively, Boone committed the misdemeanor offense of giving a peace officer false information pursuant to KRS 523.110(1) if he gave:

> a false name, address, or date of birth to a peace officer who has asked for the same in the lawful discharge of his or her official duties with the intent to mislead the officer as to his or her identity. The provisions of this section shall not apply unless the peace officer has first warned the person whose identification he or she is seeking that giving a peace officer false identifying information is a criminal offense.

Other than the requisite warning involved in giving a peace officer false identifying information, the two offenses are strikingly similar. It is surprising, therefore, that the parties have not cited, nor have we independently located, any published authority definitively resolving whether giving a peace officer false identifying information under similar facts as those at hand may be a lesser-included offense of theft of identity.

The most potentially relevant published case is *Crouch v. Commonwealth*, 323 S.W.3d 668 (Ky. 2010), but we agree with Boone that the facts and issues here are materially distinguishable. In *Crouch*, a person gave an officer an alias and matching social security number. The person was ultimately convicted of theft of identity and argued that "he should have been prosecuted for the misdemeanor offense of giving a false name to a police officer instead of the felony offense of theft of identity." *Id.* at 671. Our Supreme Court disagreed.

-14-

First, the Court held that the trial court did not err in refusing to amend the theft of identity charge to giving a peace officer false identifying information because "changing the charge against Crouch from the felony offense of theft of identity to the misdemeanor charge of giving a false name to a peace officer would have resulted in Crouch being charged with an entirely different offense." *Id.* at 672. The Court also stressed that Crouch could not have been prosecuted for providing false identifying information to an officer since the officer had not given Crouch the statutorily mandated warning.

Boone, unlike Crouch, does not argue that the trial court should have amended the indictment. And Crouch, unlike Boone, did not argue to our Supreme Court that the trial court should have given a lesser-included offense instruction on giving false identifying information to a peace officer. Indeed, Crouch had earlier made that argument but had abandoned it by the time the case wound its way to the Kentucky Supreme Court. Nonetheless, in dicta, our Supreme Court held that Crouch was not entitled to the lesser-included offense instruction because the officer had not issued the requisite warning. *Id.* at 672 n.6.

Of course, it is unquestioned here that Detective Pope warned Boone. And that warning - without which Boone could not have been properly convicted of providing a peace officer with false identifying information - is not required in

-15-

the theft of identity statute. The question thus is whether the warning is an element of the offense. We determine that it is not.

Generally, elements of a criminal offense mandate what conduct *the defendant* must engage in to commit that offense. The warning requirement of giving false identifying information to a peace officer mandates conduct which *a peace officer* must engage in before a defendant may commit that offense - conduct over which the defendant has utterly no control. Consequently, we conclude that the warning is a prerequisite, not an element, of giving a police officer false identifying information.[2]

Theft of identity and giving false identifying information to a police officer are so remarkably similar, at least under facts like those at hand, that the proper course for a trial court is to submit both charges to the jury, which then has the discretion to determine which (if either) best applies to the defendant's conduct. "[T]he trial court's failure to give a necessary lesser-included offense instruction cannot be deemed a harmless error." *Commonwealth v. Swift*, 237 S.W.3d 193, 196 (Ky. 2007). Therefore, because he was entitled to the requested

---

[2] We note that a previous panel of our Court reached the identical conclusion in *Stephenson v. Commonwealth*, No. 2016-CA-000013-MR, 2017 WL 5907976, at *3 (Ky.App. 2017) (unpublished), which deemed the warning to be "a prerequisite to bringing the charge" rather than an element of the crime.

lesser-included offense instruction, we reverse Boone's conviction for theft of identity.

As this conviction was the basis for Boone's being a PFO I and receiving an enhanced sentence pursuant to that status, we also reverse his PFO I conviction. We affirm his felony conviction for possession of a controlled substance, misdemeanor conviction for operating on a suspended license, and violation for not have an illuminated rear license plate because the failure to give the lesser-included offense instruction "had no discernible bearing upon [those] conviction[s]." *Jones v. Commonwealth*, 237 S.W.3d 153, 160 (Ky. 2007). *See Baker v. Commonwealth*, 545 S.W.3d 267, 281 (Ky. 2018) (declining to reverse other convictions based on an error limited to a tampering with physical evidence charge).

Because we are reversing Boone's PFO I conviction and sentence, this then moots Boone's unpreserved final argument that he is entitled to palpable error relief for his PFO I sentence based on the Commonwealth's having provided misleading information regarding his parole eligibility. As this error could reoccur on remand, we caution the Commonwealth that it is improper to provide the jury with information as to parole eligibility and then mislead the jury by not clarifying how this eligibility will change based upon conviction as a PFO I.

For the foregoing reasons, we reverse Kenneth Boone's convictions for theft of identity and being a PFO I as imposed by the Fayette Circuit Court and remand those charges for further proceedings consistent with this Opinion. We affirm Boone's convictions and sentences for possession of a controlled substance, operating on a suspended or revoked license, and not having an illuminated rear license plate.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky